SMACK *v.* WHITT, ET AL.

[No. 147, September Term, 1967.]

*Decided April 11, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, BARNES, FINAN and SINGLEY, JJ.

*Frederic E. Wierman* with whom were *Hamilton P. Fox* and *Hearne, Fox & Bailey* on the brief, for appellant.

*K. King Burnett*, with whom were *Webb & Burnett* on the brief, for Woodrow Schoolfield and J. Roland Dashiell & Sons, Inc., part of appellees; no brief filed on behalf of other appellee.

BARNES, J., delivered the opinion of the Court.

This appeal involves a collision between a passenger automobile and a truck at the intersection of Camden Avenue and College Avenue in the City of Salisbury, Wicomico County on April 19, 1965, at approximately 10:15 a.m.

The appellant, Mrs. Darlene J. Smack, and her mother Mrs. Virginia Elizabeth Whitt, had been shopping in Salisbury on the morning of April 19. After the shopping was completed, Mrs. Smack was driving her Falcon automobile, with Mrs. Whitt as her sole passenger, seated on the right-hand front seat, in a southerly direction on Camden Avenue, which runs in a north-south direction. Camden Avenue is 32 feet wide from curb to curb. It intersects College Avenue which runs in an east-west direction. College Avenue has a width of 40 feet from curb to curb on the east side of the intersection with Camden Avenue and has a width of 30 feet on the west side of the intersection. Both streets are paved with macadam and are available for two-way traffic. The posted speed limit for both streets is thirty miles per hour. The day was clear and the streets were dry.

Traffic was controlled by a traffic light hung approximately in the center of the intersection. Its sequence was: green 26 seconds, amber 4 seconds, red 30 seconds. This sequence is the same for both Camden and College Avenues. At the time of the collision the traffic light was operating properly.

The appellee, Woodrow Schoolfield, aged 27 with no prior traffic violations, had been employed by the appellee, J. Roland Dashiell & Sons, Incorporated (Dashiell), for nine years as an equipment operator, which included the operation of the corporation's trucks. On April 19, while in the course of his employment, he was operating a Ford tandem 10 wheel dump truck loaded with top soil in a westerly direction on College Avenue. He testified that as he approached the intersection of College Avenue with Camden Avenue, at a speed of between fifteen and twenty miles per hour, he noticed that the traffic light was red as he approached it and started to slow down. Before he came to a full stop, however, the light turned green when he was fifty feet from it and he then proceeded to drive through the intersection. When he was in the intersection with the traffic light approximately over the cab of the truck he noticed the Smack automobile coming south on Camden Avenue. He first saw it "back to the second house" from the intersection, which he estimated to be about 150 to 200 feet, coming at a speed which he thought would not enable the operator to stop. He then applied his brakes and stopped the truck without leaving any skid marks. He heard the screeching of tires and the Smack automobile struck the truck on the right side damaging the right front fender, the right portion of the front bumper and a step on the side of the truck. The damages to the truck amounted to approximately $200. Mr. Schoolfield was not injured. The Smack automobile was completely demolished and both Mrs. Smack and Mrs. Whitt were injured. They were each rendered unconscious and thereafter taken to the hospital. Mr. Schoolfield immediately rendered assistance. The investigating police officer testified in regard to the relevant physical facts. He stated that there were no skid marks left by the truck, but that skid marks left by the Smack vehicle measured 46 feet. There were no defects observed in either vehicle. The left side of the Smack vehicle came into contact with the truck.

Mrs. Smack testified that when she was "about a hundred fifty feet" or "about one hundred feet" from the intersection of Camden and College Avenues she looked at the traffic light and saw that it was green. She did not look again at the light and did not know the color of the light as she entered the intersection. She was proceeding at about 25 miles per hour. As she approached the intersection she saw the truck coming west on College Avenue. She "did not think he could stop, he was going so fast. So I applied my brakes." She "couldn't say for sure what speed it was but he was going pretty fast. * * * I don't know what he was driving."

Mrs. Whitt testified that she looked at the traffic light about 100 to 125 feet from the intersection. She noticed that it was green, did not look at it again, heard brakes, looked at the truck and saw "the truck and car getting ready to hit." She estimated the speed of the Smack vehicle as 25 to 30 miles per hour.

Three eye witnesses, in addition to Mr. Schoolfield, testified that the traffic light showed green for College Avenue when the truck entered the intersection. Abel Johnson who was driving an empty truck owned by Dashiell east on College Avenue saw the traffic light as he approached the intersection of College and Camden Avenues. He saw the light turn green when he got to the second house from the intersection—a distance of approximately 50 feet—and saw the truck operated by Mr. Schoolfield approaching the intersection. He then heard "tires squealing" and saw the Smack automobile "coming down, couldn't stop, and I completely stopped ahead of it, back on the other side." He saw the collision coming and it looked like the truck operated by Mr. Schoolfield had completely stopped. "She was skidding. * * * [T]he car skidded into the truck as far as I could see my end of it because it didn't seem to me the truck was moving."

Sharon Lowe and her twin sister Sheryl Lowe, 15 years of age and in the tenth grade in school, lived at 408 West College Avenue, the fourth house from the intersection. They were walking on College Avenue away from the intersection (it was Easter Monday, a school holiday) when they heard the screeching of tires, turned around, looked at the light and saw that it

was green for College Avenue. The collision very shortly occurred.

The original action in this matter (No. 5673 Civil) was filed by Mrs. Whitt and her husband against Mr. Schoolfield and Dashiell as defendants to recover for their damages. The defendants interpleaded Mrs. Smack as a third-party defendant and thereafter the Whitts filed an amended declaration including Mr. Smack as a joint defendant. The second action (No. 5882 Civil) was then filed by Mrs. Smack against Mr. Schoolfield and Dashiell to recover for her damages. The two cases were consolidated for trial and a jury trial was held on April 5 and 6, 1965. At the conclusion of all the testimony, the trial court directed a verdict for Mr. Schoolfield and Dashiell in both cases on the ground that there was no evidence legally sufficient to go to the jury on the question of their primary negligence. The trial court directed a verdict on the issue of liability against Mrs. Smack in No. 5673 Civil and the jury awarded damages in the amount of $5700 in favor of Mrs. Whitt and $1300 in favor of Mr. Whitt. These judgments in No. 5673 Civil are not before us in the present appeal which was taken by Mrs. Smack from the judgment for costs entered in favor of Mr. Schoolfield and Dashiell after the trial court directed the verdict in their favor.

We are of the opinion that the trial court properly directed the verdict in favor of the defendants Schoolfield and Dashiell and will affirm the judgment in their favor for costs.

It is clear that in an appeal of this nature we must assume the truth of all evidence in the case tending to sustain the claim of the party against whom the verdict is directed as well as all inferences of fact reasonably and fairly deducible therefrom. *Ferguson v. Wooten,* 240 Md. 186, 213 A. 2d 498 (1965). A verdict should not be directed by the trial court if there is any evidence, however slight, legally sufficient to prove negligence on the part of the defendant, unless the plaintiff is guilty of contributory negligence as a matter of law. *Stein v. Overlook Joint Venture,* 246 Md. 75, 227 A. 2d 226 (1967).

The plaintiffs had the burden to produce evidence from which the jury might find that Mr. Schoolfield had violated the standards of due care and that such violation was the proximate

cause of the injuries and damages for the recovery of which suit was brought. Inasmuch as the intersection was controlled by a traffic light, the following provisions of Code (1957), Article 66½, Section 193 applied:

"(a) *Green alone or 'go'.*
"(1) Vehicles facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. All vehicles shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited.
* * *
"(c) *Red alone or 'stop'.*
"(1) Vehicles facing the signal shall stop before entering the nearest crosswalk at an intersection or at such other point as may be indicated by a clearly visible line and shall remain standing until green or 'go' is shown alone."

For the appellant to have gotten to the jury there must be evidence, therefore, showing either that Mr. Schoolfield entered the intersection when the light was red or that when he entered the intersection the Smack vehicle was already lawfully within the intersection. Since there is no contention that the Smack vehicle was in the intersection when the truck entered, the decision in the case turns on whether there was any evidence to show that Mr. Schoolfield entered the intersection when the light was red. As we have seen, four eye-witnesses stated that the light was green for College Avenue when Mr. Schoolfield drove the truck into the intersection. There is no evidence to the contrary. Mrs. Smack does not say that *when she entered the intersection* the light was green for Camden Avenue. She states that the light was green for Camden Avenue either 100 or 150 feet from the intersection when she last looked at it, and that she was going 25 miles per hour.

Mrs. Smack seeks to use a calculation based upon the "well known fact" that an automobile travelling 25 miles per hour will cover 37 feet per second and, relating this calculation to the established sequence of the traffic light, maintains that there was

sufficient evidence to carry the case to the jury on the issue of Mr. Schoolfield's primary negligence as this evidence would indicate that Mrs. Smack entered the intersection on a green or at least an amber light. The difficulty with this argument is that there was no evidence that the speed of the Smack vehicle was constant. There was no expert witness giving an opinion in regard to whether Mrs. Smack entered the intersection on a red light. Many elements must be considered in reaching such an opinion, such as, for example, the nature, type and age of the surface of the road, the type of tire tread and its extent of wear, the efficiency of the brakes, the weight of the vehicle involved, the coefficient of friction, and the distance the vehicle slid before the tire marks became visible. Without such an admissible expert opinion, the jury in the present case would have been left to speculate on whether Mrs. Smack could have entered the intersection on a green or even an amber light. As we have stated: "Surmise and conjecture are not sufficient to warrant submitting the case to the jury." *Stem v. Nello L. Teer,* 213 Md. 132, 140, 130 A. 2d 769, 772 (1957).

Mrs. Smack also argues that even assuming that Mr. Schoolfield had the green light he was negligent in stopping, rather than continuing through the intersection, and if he had looked for the Smack vehicle prior to his entry into the intersection he would have avoided the accident. There is, however, no evidence to support this contention. Mr. Schoolfield, having observed that the traffic light was green, was proceeding slowly toward the intersection and when the nose of the truck reached the intersection he saw the Smack vehicle and believed it could not stop. He was driving a heavily loaded ten-wheel truck. There is no evidence that he could have cleared the intersection and the truck was struck shortly after he entered the intersection. He was faced with an emergency and had no opportunity for reflection or for deliberate choice. It cannot be said that he acted unreasonably under these circumstances. See *Friel v. Freeland,* 231 Md. 27, 188 A. 2d 340 (1963) ; *Burhans v. Burhans,* 159 Md. 370, 150 A. 795 (1930).

Then too, if it be assumed that Mr. Schoolfield entered the intersection on the green light, the boulevard rule would apply and he would be the favored driver. The proximate cause of the

accident was the failure of the unfavored driver to yield the right-of-way, which the law requires, and the favored driver is entitled to assume that this would be done. *Thompson v. Terry,* 245 Md. 480, 226 A. 2d 540 (1967).

> *Judgment affirmed, the appellant to pay the costs.*