## NEARY, ET UX. *v.* POSNER, ET AL.

[No. 212, September Term, 1968.]

*Decided May 6, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*Paul M. Nussbaum,* with whom were *Herbert Levenstein and Reichelt, Nussbaum & Brown* on the brief, for appellants.

*William M. Canby,* with whom were *Miller, Miller & Canby* on the brief, for Charles P. Posner et ux., part of appellees.

*Herbert D. Morrison* for Apex Exterminating Company another appellee.

No brief filed on behalf of Ted Lingo, Inc., another appellee.

FINAN, J., delivered the opinion of the Court.

Appellants, plaintiffs below, appeal a judgment directed at the close of the plaintiffs' case in favor of the defendant-appellees, in an action sounding both in contract and tort. The suit was for damages resulting from the alleged failure of the appellee, Apex Exterminating Company (Apex), to furnish an accurate report relating to termite infestation of a dwelling house sold to the appellants by the appellees, Charles P. Posner and Doris Posner, his wife, through the real estate brokerage firm of Ted Lingo, Inc., also an appellee. Counts grounded on express and implied warranties were also included in the declaration.

A jury trial was held on March 12, 1968, in the Circuit Court for Montgomery County. The facts, viewing the evidence in the light most favorable to the appellants, appear as follows: on or about February 21, 1965, appellants entered into a contract to purchase a home located on Tenbrook Drive, Silver Spring,

from its owners, the appellees, Posners. The contract of sale prepared by the real estate office of Ted Lingo, Inc., followed the usual form used by real estate brokers in suburban Montgomery County and was conditioned on the purchasers' obtaining financing through the Federal Housing Administration (F.H.A.).

The appellants, concerned about the infestation of termites in the dwelling, made inquiries about their presence. A salesman for the real estate broker informed them that the house had previously been inspected for F.H.A. approval for loan purposes and found to be free from termites and that before settlement an additional inspection would be made.

On April 6, 1965, Apex made an inspection of the house and in its certificate directed to Mr. Posner, the seller, stated:

"Re: Termite inspection at 9922 Tenbrook Drive, Silver Spring, Maryland.

"In accordance with your request, our representative inspected the above premises, April 6, 1965, for evidence of subterranean termites.

"Our Apex representative is well trained in termite inspection and is a thorough conscientious investigator. However, the characteristics and behavior of subterranean termites are such that it is not always possible to discover infestation or damage without extensive probing of areas not readily accessible and the dismantling of parts of the structure, often at considerable expense. Even with the most thorough and expensive inspection, in our opinion, it is never possible to say as to any structure that it is absolutely free of termites.

*"The inspection described herein has been made on the basis of visible evidence of readily accessible areas and this report is submitted without warranty, guarantee or representation as to concealed evidence of infestation or damage or as to future infestation."* (Emphasis supplied.)

At the settlement on April 20, 1965, the sellers showed this certificate to the appellants and the lender before consumma-

tion of the sale and execution of the F.H.A. mortgage and appellants had the opportunity to review all documents germane to the transaction including the certificate of inspection.

The appellants moved into the house on May 1, 1965. Mrs. Neary testified that on the day they moved in she saw some bugs on a pile of soiled diapers which were on the front porch of the house. When the diapers were removed the bugs disappeared and she stated that she did not know what kind of bugs they were and that she could not identify a termite if she saw one. During the first week in June, 1965, the Nearys' young son fell through the top step of the back porch, later some neighborhood children went through another step, and Mrs. Neary while washing molding, pushed her finger through the woodwork. From June until September, 1965, Mrs. Neary took pictures of damaged areas in the house as they began to appear; those pictures were introduced into evidence.

The Nearys called several exterminating companies to inspect the house, one of which was Capital Chemical Company, whose agent Theodore Godek inspected the house on November 15, 1965. Mr. Godek testified at the trial that his inspection revealed evidence of termites and termite damage in several areas. He was of the opinion that because of the advanced stage of damage that infestation had been going on for at least a year. He stated that he considered the damaged areas to be readily accessible, but could not state with any certainty how long the evidence of damage or the presence of termites may have been visible. The total damage was estimated to be $1,-062.20.

The trial court in directing a verdict in favor of the appellees stated that as a matter of law the appellants were not entitled to recover damages for losses incurred because there was no implied warranty in the sale of real estate in Maryland (except where new construction is involved), that no express guarantee as to no infestation from termites had been given to anyone, and that there was no privity of contract between Apex and the appellees.

On appeal appellants contend that the lower court was in error because it was a condition precedent to F.H.A. financing that the seller furnish at his expense a report that the property was

free from termite infestation, and the contract of sale was conditioned upon the obtention of such financing. The appellants further urge that as purchasers, they have recourse against all parties responsible for the rendering of the termite inspection report, because of the subsequent discovery of termites and termite damage, which they say existed prior to the sale, and which they claim should have been discovered prior to the sale.

To support these contentions the appellants used a scatter gun approach, assailing the doctrine of *caveat emptor* and invoking the doctrine of implied warranty, while at the same time gratuitously elevating the inspection certificate to the status of a guaranty. They further seek to cast themselves in the role of a third party beneficiary to whom the fruits of the guaranty would inure.

We dispose of the appellants' reliance on the doctrine of implied warranty by reference to the recent case of *Allen v. Wilkinson,* 250 Md. 395, 243 A. 2d 515 (1968), wherein Judge Marbury writing for the Court said:

> "We recognize that as the law of this State stands today except in unusual circumstances there is no implied warranty in the sale of a completed residence * * *." *Id.* at 398.

See also *Fegeas v. Sherrill,* 218 Md. 472, 147 A. 2d 223 (1958) ; *Berger v. Burkoff,* 200 Md. 561, 92 A. 2d 376 (1952).

Regarding appellants' claim that as third party beneficiaries they are entitled to the benefits inuring from the so-called guarantee, this may have required extended treatment on our part, if in fact, such a guarantee existed. However, the plain and simple language of the inspection certificate renders it abundantly clear that it falls short of being a guarantee. In fact, the language of the certificate expressly declares that it is "submitted without warranty, guarantee or representation as to concealed evidence of infestation or damage or as to future infestation."

Accordingly, even if we were to assume, without conceding, that the appellants are in the position of a third party beneficiary, with relation to the inspection certificate rendered by

Apex, they are not the beneficiaries of any guarantee or warranty.

Insofar as any express or implied warranty arising out of the negotiations with the real estate broker may be concerned, the evidence again falls short of supporting that any representation was made that the house was free of termite infestation. The conversations between the appellants and the sellers' agent merely support the fact that the F.H.A. required a termite inspection before it would approve financing and that such an inspection would be made.

The termite inspection was made as promised and a certificate was supplied. Assuming, *arguendo,* that the appellant would have a cause of action if the termite inspection had been negligently performed, here again, the evidence failed to support any actionable conduct or omission on the part of Apex.

We think that we should not ignore the inherent logic in the proposition, as stated by counsel for Apex in their brief: "No testimony or proof was presented to show Apex missed any visible manifestation of termites. It was good business to find termites so that they would probably be hired to treat them thereafter."

The fact that termites were found by Capital Chemical Company on November 15, 1965, is no evidence that there was any visible manifestation of termites at the date of the inspection by Apex on April 6, 1965, some seven months previously. It is true that the expert witness Mr. Godek, in answer to the question as to how long, in his opinion, termite manifestation should have been noticeable, stated:

> "This, I think, is a very difficult question. For a period of seven months that I have been called, in our probing we can find these things and notice by the amount of damage and advance stage, *we can only guess*—and in my opinion from my experience as I stated in my letter—I thought it was at least one year old. *It isn't necessarily all the time that evidence is going to show,* since I did not make an inspection in April." (Emphasis supplied.)

And on cross-examination in response to the question of whether

termites at times suddenly attack areas which have never been attacked before, Mr. Godek admitted, "It happens quite often."

Certainly, to have allowed the jury to consider the question of negligence in the context of such evidence would have led them into the realm of conjecture and speculation.

In *Smack v. Whitt,* 249 Md. 532, 538, 240 A. 2d 612 (1968) we quoted *Stem v. Nello L. Teer,* 213 Md. 132, 140, 130 A. 2d 769 (1957), to the effect that "Surmise and conjecture are not sufficient to warrant submitting the case to the jury"; to which we would add the observation of this Court in *Flohr v. Coleman,* 245 Md. 254, 268, 225 A. 2d 868 (1967) that "* * * A party who has the burden of proving another party guilty of negligence does not meet this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that the other party has been guilty of negligence. *Fowler v. Smith,* 240 Md. 240, 213 A. 2d 549. * * *." In the instant case we fail to note a scintilla.

*Judgment affirmed; appellants to pay costs.*