## MONDAWMIN CORPORATION *v.* KRES

[No. 346, September Term, 1969.]

*Decided June 3, 1970.*

308

310

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Samuel S. Smalkin,* with whom were *Rollins, Smalkin, Weston & Andrew, Hyman Ginsberg* and *Ginsberg & Ginsberg* on the brief, for appellant.

*Joseph I. Pines,* with whom were *Max R. Israelson* and *Israelson, Pines & Jackson* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

In this personal injury case it is contended by the appellant, Mondawmin Corporation, defendant below (Mondawmin), that the Superior Court of Baltimore City (Cole, J.) erred in declining to grant the defendant's motion for a directed verdict at the conclusion of the testimony and, later, its motion for a judgment n.o.v. in its favor, because (1) there was no legally sufficient evidence that the defendant was guilty of primary negligence and (2) the evidence established that the appellee, Mrs. Isabel B. Kres, the plaintiff below, was guilty of contributory negligence as a matter of law. It is further contended that the trial court erred in its rulings on the evidence, thereby prejudicing the defendant.

In considering the granting or refusing of a motion for a directed verdict and a judgment n.o.v. by the lower court, we must assume the truth of all of the evidence in favor of Mrs. Kres, the party against whom the motion was directed as well as all inferences of fact reasonably and fairly deducible therefrom. *Smack v. Whitt,* 249 Md. 532, 240 A. 2d 612 (1968) and prior Maryland cases

therein cited. With this rule in mind, the facts are as follows:

Mrs. Kres, the plaintiff, at the time of the accident on December 9, 1966, was 65 years of age and in good health. She was retired on Social Security. Her retirement income was supplemented by part-time work at the Franklin Simon store on the upper level in the Mondawmin Mall in Baltimore City, operated by Mondawmin. On the day of the accident she was going to the shoemaker in the Mall prior to reporting for work. She was wearing shoes with leather soles and rubber cuban heels. She arrived about 8:50 A.M., ten minutes before she had to report for work. There were two ways to get to the lower level —an escalator and a circular staircase. The escalator was not in use so she went to the spiral steps in the Mall in order to get to the lower level, where the shoemaker's shop was located. The staircase, which started at the upper level, was circular, wound around over a pool in which there were water fountains, and ultimately ended at the lower level of the Mall. The pool, over which the circular stairway was constructed, is a large one in which there were rocks, plants and a number of water fountains arranged in order to spray water upwards in a manner pleasing to the eye, thus making the shopping area more attractive esthetically.

Mrs. Kres, wearing her bifocal glasses which she had worn for a number of years, was in no hurry and walked at her usual gait. She started down the circular stairway on the left side, holding the railing with her left hand and carrying her handbag and "tote" bag in her right hand. She observed other people descending the steps ahead of her. As she started down the steps, she did not observe anything wet on the steps. She proceeded down the steps and when she got to the second or third step from the bottom, almost directly over the middle of the circular pool, her heels slipped out from under her on "something slippery or wet." At the time Mrs. Kres slipped she was holding on to the banister rail but she was thrown with such force that she "had to let go of

the banister." As she lay on the landing at the bottom of the steps she turned her head to see what she fell on and saw that the steps were wet. Her coat and her stockings were also wet. The fountain was operating and she remembered hearing the sound of water running. The fountain was "going on high" but she could not remember whether or not it was spraying. She saw that part of the stairway, about 12 inches toward the railing, was wet. The steps were terrazzo, marbleized black and white in color.

As a result of her fall, Mrs. Kres suffered a fracture of the hip. She underwent an operation to insert a pin in the fractured hip and another operation later to remove the pin. Thereafter, there was a long period of treatment and convalescence in a hospital and nursing home. Mrs. Kres is permanently crippled.

Mrs. Kres, the plaintiff, called Joseph Zalkind as her witness. He is an employee of A. S. Beck Company which operated a store at the Mondawmin Shopping Center when the accident occurred. Because of a transfer in his employment prior to the trial, Mr. Zalkind had become a permanent resident of California. Portions of his deposition, taken by written questions propounded by the plaintiff and cross-questions propounded by the defendant, Mondawmin, were admitted into evidence. In his deposition, Mr. Zalkind testified that on December 9, 1966, the date of the accident, he was working as manager of the A. S. Beck Company in the Mondawmin Shopping Center. He did not see Mrs. Kres fall, but saw her lying on the bottom landing after she fell. Prior to the happening of the accident, he had observed the condition of the steps and landing on several occasions and saw that the steps or landing were wet. On one or two occasions prior to December 9, 1966, he had spoken to Charles J. Pennypacker, the manager of the Mondawmin Shopping Center and an employee of Mondawmin, and had suggested to him that the ornamental spray should be lowered "to eliminate the steps getting wet."

Ronald James Shaver, an employee of the Franklin

Simon Company, testified for the plaintiff. He had greeted Mrs. Kres outside the building prior to her fall and had observed that she was carrying a pocketbook and a bowling shoe-type bag. Shortly after this, he was called from his place of employment to where Mrs. Kres was lying at the bottom of the circular staircase. Three or four persons had gathered around her, one of whom was a security guard employed by the Mondawmin Shopping Center. He observed that the steps were wet and that there were fountain nozzles on either side of the landing step. On prior occasions he had observed "the splashing of the water as it splashed up on to. . .the pavement of the landing." He had "stood there and seen the steps get wet * * * From the splashing of the water in the pool." The splashing was caused by a "nozzle effect that gives a spray." On prior occasions, he had seen water come out of a pipe, hit the pool and splash on the steps. He stated that there were various heights to the fountains located in the pool. He had seen the steps and landing wet.

James R. Edmonds, III, a registered architect also testified for the plaintiff. He testified that he had examined the whole flight of circular stairs as well as the ramp leading from the balcony to the main floor level. He stated that the curved stairway from the balcony to the floor met all architectural standards in design and construction, and that the nature of the steps themselves was appropriate for indoor use. He stated, however, that the position of the spray nozzles of the fountains in the pool "could certainly have caused a wetting of the area in question." He also stated that the effect of water on the surface of the steps would make them slippery. He said in regard to the character of footwear, that going barefoot would be the least slippery, "leather would be the next less slippery" and "rubber would be the most slippery * * *." He testified that in his opinion "it is unwise and unsafe to allow water to remain in any quantity on these steps except for the purpose of cleaning them, after which it is immediately removed."

Harry Bart, president of Mondawmin, was called by the

plaintiff and testified that the stairway was erected in 1955 and that the fountains were put in during 1963. He stated that no changes had been made up to the time of trial. He also stated that Mondawmin had no prior notice from any source that any person had fallen or was injured at the site in question. However, Meyer Ohen, a legal assistant of the Workmen's Compensation Commission, under subpoena brought in records of the Commission indicating that on June 22, 1964, Ethel Levin, an employee of the Franklin Simon Company, was injured while walking on the circular staircase in the Mondawmin Mall. The records disclosed that in describing how the accident occurred, Mrs. Levin stated "I was walking down steps when I slipped on the wet step and hurt my back and leg."

Wesley Tarr, a professional surveyor produced as a witness for Mondawmin, testified that the depth of the water in the pool was 10 inches and that the top of the pipes was 20½ inches from the bottom of the pool. Hence, the walkway or landing was 3½ inches above the water in the pool and 7 inches below the top of the pipes. He also stated that when he inspected the stairway on one occasion, all but one of the fountains were in operation and that the inoperative one was the fountain near the circular stair.

1.

In our opinion, the trial court ruled correctly that there was sufficient evidence in the case of Mondawmin's primary negligence to go to the jury; and the lower court properly refused to grant Mondawmin's motion for a directed verdict and motion for judgment n.o.v.

Judge McWilliams, for the Court, in *Metropolitan Auto Sales Corp. v. Koneski*, 252 Md. 145, 155, 249 A. 2d 141, 147 (1969) aptly stated:

> "Appellant [Metropolitan] contends the trial court erred in denying its motion for a directed verdict. In our consideration of this contention we must assume the truth of all evidence tend-

ing to sustain the Koneskis, against whom the motion was directed, as well as all inferences of fact reasonably and fairly deducible therefrom. *Smack v. Whitt,* 249 Md. 532, 536, 240 A. 2d 612 (1968) ; *Wood v. Johnson,* 242 Md. 446, 219 A. 2d 231 (1966). If there is any relevant and competent evidence from which a rational mind could infer a fact in issue, then a directed verdict should not be granted. *Plitt v. Greenberg,* 242 Md. 359, 219 A. 2d 237 (1966)."

Mrs. Kres' status as a business visitor or invitee to the premises in question is not challenged. Mondawmin was under a duty, as owner of the premises, to exercise reasonable care to maintain the premises in such a condition that Mrs. Kres, as a business invitee, "would not be subjected to any risk or danger arising from the physical state of its property, except such as was naturally and ordinarily incident to the nature of its business." *Moore v. American Stores Co.,* 169 Md. 541, 546, 182 A. 436, 438 (1936). See also *O'Neill & Co. v. Crummitt,* 172 Md. 53, 60, 190 A. 763, 766 (1937).

In discussing the duties of the occupant of premises to which a business visitor is invited, we stated in *Honolulu Limited v. Cain,* 244 Md. 590, 595-96, 224 A. 2d 433, 435-36 (1966) :

"The duty of an occupant of land toward his business 'invitee' rested, in its inception, upon an implied representation of safety, 'a holding out of the premises as suitable for the purpose for which the visitor came * * *', Prosser, *Business Visitors and Invitees,* Selected Topics of the Law of Torts 243, 261 (1953). The word 'invitee' itself, conveys the idea that the place is held out to the visitor as prepared for his reception. The occupant does not, of course, become an insurer of the safety of those who accept his invitation. But when the public is led to believe that premises have been offered for its

entry, the law is clear that the occupant assumes a duty of reasonable care to see that the place is safe for the purpose. The duty extends to those who are injured when they enter in response to the invitation.

"It is plain to us that there was sufficient evidence to permit a jury to find that the defendant had breached its duty of reasonable care in the instant case. Indeed, there are at least two separate grounds upon which to base this finding.

"The Restatement of the Law of Torts, Second, sec. 343, sets forth the standards governing the relationship of landowner and business invitee with respect to a hazardous condition. The landowner is subject to liability for harm caused by a natural or artificial condition on his land if (a) he knows or by the exercise of reasonable care could discover the condition, (b) he should expect that invitees will not discover the danger, or will fail to protect themselves against it, (c) he invites entry upon the land without (1) making the condition safe, or (2) giving a warning. These principles have been approved many times by this Court. *Yaniger v. Calvert Bldg. & Const. Co.*, 183 Md. 285, 289, 37 A. 2d 263, 265 (1944) ; *Evans v. Hot Shoppes, Inc.*, 223 Md. 235, 239, 164 A. 2d 273, 276 (1960) ; *Morrison v. Suburban Trust Co.*, 213 Md. 64, 130 A. 2d 915 (1957) ; *Glaze v. Benson*, 205 Md. 26, 106 A. 2d 124 (1954).

"Although in certain circumstances, the design or construction of the premises themselves may present an unreasonable danger to a business invitee, *Rose v. Melody Lane of Wilshire*, 39 Cal. 2d 481, 247 P. 2d 335 (1952) ; *Magnolia Petroleum Co. v. Barnes*, 198 Okla. 406, 179 P. 2d 132 (1946) ; *DeWeese v. J. C. Penney Co.*, 5 Utah 2d 116, 297 P. 2d 898, 65 A.L.R.2d 399 (1956), we do not find it necessary to pass upon

the issue of whether the defendant could be held negligent in allowing the flow of water from one end of the lot to the other."

We first address ourselves to a consideration of whether or not there was evidence in the case and reasonable inferences from that evidence upon which a jury could find that Mondawmin knew, or could have, by reasonable care, discovered the condition which caused the injury to Mrs. Kres. In our opinion, there was such sufficient evidence. Mr. Bart, President of Mondawmin, testified that since the fountain was built in 1963, there had been no changes made to it up to the time of trial in 1970, so that the condition of the fountain at the time of trial was the same as it was when erected in 1963. Mr. Edmonds, the architect, after examining the nozzles in the fountain near the stairs, stated that, in his opinion, "the position of the spray nozzles of the fountains in the pool under the runway could certainly have caused a wetting of the area in question." He also testified that the effect of water on the surface of the steps would make them slippery and further, that they would be most slippery to a rubber heel. He stated that he thought it to be "unwise and unsafe to allow water to remain in any quantity on these steps except for the purpose of cleaning them, after which it is immediately removed." Mondawmin produced testimony which indicated that when the stairs were cleaned any water was immediately removed.

Joseph Zalkind, an employee of A. S. Beck Company, a tenant in the Mondawmin Shopping Center, testified that prior to the date of Mrs. Kres' injury on December 9, 1966, he had spoken to Mr. Pennypacker, the manager of the Mondawmin Shopping Center, and told him that "the ornamental fountain spray should be lowered to eliminate the steps getting wet." Ronald J. Shaver, an employee of Franklin Simon, also a tenant in the Mondawmin Shopping Center, testified that prior to the injury to Mrs. Kres, he had on occasions observed the fountain spray splash into the pool and saw that the steps got

wet from the splashing. He also stated that he saw Mrs. Kres after her fall, lying on the landing, and saw that the steps were wet.

Mondawmin, in our opinion, could expect its business invitees not to discover the danger or protect themselves against it. Water is clear and often not visible to the naked eye on a portion of a step. A business invitee cannot reasonably be expected to anticipate that water is present on a portion of a step which he is invited to use to go from one level to another.

Mrs. Kres testified that when she started down the stairs she was holding onto the banister with her left hand. When she got down to the second or third step, directly over the fountain, her heels (she was wearing oxford shoes with cuban heels with rubber bottoms) slipped from under her and she fell down. As she lay on the landing she looked back and saw that the steps were wet. She testified that her clothing was also wet. The fountain was operating and the remaining steps were dry except near the banister at the place where she fell. Mondawmin gave no warning by sign or by barricade that the steps were wet or that they were slippery when wet and Mrs. Kres received no warning that the steps where she fell were wet.

In the light of these facts and the reasonable inferences from them the jury could have concluded—as it did—that Mondawmin knew or should have known of a dangerous condition and was under a duty to warn its business invitees of that condition. The jury also, in our opinion, could have reasonably concluded that the water on the step on which she fell was the proximate cause of her fall and resulting injury. We conclude, therefore, that there was sufficient evidence to go to the jury on the issue of primary negligence.

### 2.

Mondawmin earnestly contends that Mrs. Kres was guilty of contributory negligence as a matter of law and that the lower court erred in not granting its motion for

a directed verdict and for judgment n.o.v. for this reason. We do not agree with this contention.

Contributory negligence is an affirmative defense which Mondawmin, as defendant, had the burden of proving. Mondawmin must have proved not only that a reasonably prudent person, in the circumstances, would have taken certain precautions, but also that Mrs. Kres failed to take those precautions and her failure to do this contributed directly to her injury. *Abraham v. Moler,* 253 Md. 215, 218, 252 A. 2d 68, 70 (1969) and prior Maryland cases therein cited.

Judge Delaplaine, for the Court, stated in *Rawls v. Hochschild, Kohn & Co., Inc.,* 207 Md. 113, 117-18, 113 A. 2d 405, 407 (1955) :

> "The customer is entitled to assume that the proprietor will exercise reasonable care to ascertain the condition of the premises, and if he discovers any unsafe condition he will either take such action as will correct the condition and make it reasonably safe or give a warning of the unsafe condition." (Citing two prior Maryland cases)

Our predecessors in *Chalmers v. A. & P. Tea Co.,* 172 Md. 552, 559, 192 A. 419, 422 (1937) indicated that patrons are entitled to rely to some extent upon the presumption that a storekeeper "will see that the passage ways provided for their use are unobstructed and reasonably safe."

In the present case there were persons using the stairs ahead of Mrs. Kres. She had no reason to anticipate that there was any dangerous condition on one or two of the lower steps. She looked at the top steps when she began to go down them. She took the precaution of taking a firm grip on the rail of the banister as she went down. In our opinion, the jury could reasonably find that Mrs. Kres acted in the manner any ordinarily prudent business invitee of her age and under the circumstances mentioned would act. Mrs. Kres was not guilty of contribu-

tory negligence as a matter of law. It is only when the minds of reasonable persons cannot differ that a trial court is justified in deciding the question of contributory negligence as a matter of law. See *Wiggins v. State, Use of Collins*, 232 Md. 228, 237, 192 A. 2d 515, 520 (1963). The trial court properly left this issue to the jury.

### 3.

We now turn to the rulings of the trial court on the evidence which Mondawmin contends were erroneous and prejudicial to it.

### a.

Mondawmin first contends that the testimony of Mr. Edmonds, the architect, who testified as an expert witness for the plaintiff, Mrs. Kres, should have been stricken on its motion to strike "because there was no evidence that any quantity of water had been allowed to collect on the steps to the point that the make up of the step could not absorb the water that was on it," and that an expert cannot give an opinion unless there was a basis for the opinion. Mondawmin relies on our decisions in *Burton v. State Roads Commission*, 251 Md. 403, 247 A. 2d 718 (1968); *State Health Dept. v. Walker*, 238 Md. 512, 209 A. 2d 555 (1965) and *Mangione v. Snead*, 173 Md. 33, 195 A. 329 (1937). In our opinion, the trial court did not err in declining to grant Mondawmin's motion to strike this testimony.

It is well settled that the trial court has a wide latitude in determining the qualifications of an expert witness and it is in the sound discretion of the trial court to determine if the expert has made sufficient inquiry to justify the expression of an opinion. *Brinsfield v. City of Baltimore*, 236 Md. 66, 72, 202 A. 2d 335, 338 (1964).

Mr. Edmonds testified that he had inspected the steps, examined their texture and composition and that, in his opinion, the effect of water on those steps was "to make them slippery." He stated, in effect, that although the steps were satisfactory from an engineering and architectural viewpoint, they were not satisfactory so far as

texture or surface was concerned, if water was permitted to accumulate beyond that used for cleaning when it is promptly and properly removed. He testified that the steps would, in his opinion, be unsafe when there was more than such minimal water on their surface. As we have indicated, there was evidence indicating that water had accumulated, sufficient to cause the heels of Mrs. Kres to slip and to wet her clothing when they brushed over or against the wet surface as she fell. Mr. Shaver, some minutes after Mrs. Kres' fall, testified that he saw that the steps were wet.

In our opinion, the trial court could reasonably find that a sufficient foundation had been laid for Mr. Edmonds' opinion which distinguishes the present case from *Burton v. State Roads Commission, supra.* Mr. Edmonds had made an actual inspection of the steps and had examined their texture and composition. This distinguishes the instant case from *State Health Dept. v. Walker,* where the expert had made no known examination of the properties involved in that case or of the whole island on which the properties were located. The present case is also distinguishable from *Mangione v. Snead* where a physician who sought to testify that a boy's poor mental condition had resulted from a brain concussion which he thought the boy had suffered, had made no examination of the boy until four months after the accident and the hospital record indicated only an abrasion to the boy's arm and the physician knew nothing of the boy's mental condition prior to the accident. In the instant case, Mr. Edmonds, as we have noted, made an examination of the steps and had examined their texture and composition prior to forming his opinion.

### b.

Secondly, Mondawmin contends that the trial court committed reversible error in permitting counsel to ask Leo Tracey, a special policeman or guard for Mondawmin, whether or not he had made a different statement in the past in regard to the time he turned on the fountain on December 9, 1966, the day of the accident.

On March 19, 1968, counsel for Mrs. Kres interviewed Mr. Tracey who signed a statement at that time indicating that he turned on the fountain on the day of the accident at approximately 8:45 A.M. "give or take a few minutes." Counsel for Mrs. Kres called Mr. Tracey as her witness at the trial where he testified that he turned on the fountain "a few minutes before nine" and later explained that testimony by saying "Well it could be 8:50 or 8:55." Counsel for Mrs. Kres then gave the witness his statement of March 19, 1968, to read to refresh his recollection. Although Mr. Tracey acknowledged that he had signed the statement, his recollection was apparently not refreshed and he gave the same answer "It was a few minutes before nine." The trial court at first sustained the objection of counsel for Mondawmin to the question as to whether or not "the statement contains what you have just said, or contains something different?" A bench conference out of the hearing of the jury then took place between the trial court and counsel at which counsel for Mrs. Kres explained that he was surprised by the answer of the witness and that the witness had become a hostile witness by not testifying in accordance with his prior statement. After other questions by counsel for Mrs. Kres and by the trial court, the objection of counsel for Mondawmin to the following question of counsel for Mrs. Kres was overruled by the trial court:

> "With Your Honor's permission, in light of the discussion in Chambers — Mr. Tracey, in this statement of March 19, 1968 did you not say on this date, I turned the large fountain on approximately 8:45 A.M., give or take a few minutes— did you not say that?"

The witness finally answered, "Yes."

In our opinion there was no abuse of the discretion of the trial court in permitting the inquiry into the prior inconsistent statement of Mr. Tracey. Counsel for Mrs. Kres was surprised by the testimony of the witness at the trial contrary to his prior statement and the trial

court in the exercise of its sound discretion, could properly permit the prior inconsistent statement to be explored to show why counsel had called the witness.

Judge Oppenheimer, for the Court, aptly summarized the Maryland law in this regard in *Green v. State,* 243 Md. 154, 157, 220 A. 2d 544, 546 (1966), as follows:

> " 'Although the general rule is that a party may not impeach his own witness by proof of prior statements which are inconsistent with, or contradictory to, his testimony at the trial, it is well recognized in this State that where a party satisfies the court that he has been taken by surprise, and that the testimony is contrary to what he had a right to expect, it is within the sound discretion of the trial court to determine whether or not proof of prior inconsistent statements should be permitted.' *Sellman v. State,* 232 Md. 344, 348, 192 A. 2d 788 (1963) and authorities therein cited.
>
> "This exception to the general rule that a party will not be permitted to impeach the credibility of a witness he has called, is generally recognized and has been consistently followed in this State. Under the exception, if the witness has been called in reliance upon a prior statement to the party calling him, the party who has called the witness to the stand will be allowed to show why he called him. The purpose of such showing, if a proper foundation has been laid, is to protect the party who put him on the stand. *Smith v. Briscoe,* 65 Md. 561, 569-70, 5 Atl. 334 (1886). Recourse to the right is confined to cases where the party calling the witness has been misled and surprised, or entrapped to his prejudice. *Bruce v. State,* 218 Md. 87, 94-95, 145 A. 2d 428 (1958)."

c.

Mondawmin urges thirdly that it was error for the trial court to admit into evidence the record of the Work-

324

men's Compensation Commission of a standard claim form of Mrs. Ethel Levin in regard to her accident at the Mondawmin Shopping Center on June 22, 1964, in which she described her injury as "I was walking down steps when I slipped on the wet step and hurt my back and leg."

Mondawmin, through its manager, Mr. Pennypacker, had originally stated that Mondawmin had no prior notice of anyone falling at the site, but later had introduced evidence indicating that a thorough inspection of the Mondawmin records from 1960 to date indicated that there had been only one accident on the stairway, *i.e.*, that of a Mrs. Levin in 1964. Counsel for Mrs. Kres thereupon offered the Workmen's Compensation Commission's record, which was admitted into evidence over the objection of Mondawmin that it was hearsay and "self-serving."

The record was relevant to the issue of prior notice at the site, and the location of the injury to Mrs. Levin. It was not admitted as showing Mondawmin's liability as such, but for the purposes indicated. So far as the step being "wet" when Mrs. Levin fell, there was already evidence in the case that the step upon which Mrs. Kres fell was "wet," so that this aspect of the report in regard to Mrs. Levin was only cumulative, and its admission into evidence was not prejudicial to Mondawmin.

d.

Finally, Mondawmin objected to the admissibility of answers of the non-resident witness Joseph Zalkind to certain questions addressed to the witness by Direct Interrogatories and by Cross-Interrogatories, and contends that the trial court erred in admitting these answers into evidence. Without setting out the various questions and answers in full, we have examined them carefully. We have concluded that there was no abuse of discretion by the trial court in admitting the answers and no prejudicial error resulted from these rulings by the trial court.

*Judgment affirmed, the appellant to pay the costs.*