UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

DELORES KONKA,
Plaintiff-Appellee,

and

ANTHONY J. KONKA, JR.,

No. 97-1013

Plaintiff,

v.

WAL-MART STORES, INCORPORATED,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation;
William G. Connelly, Magistrate Judge.
(CA-94-3546-CCB)

Argued: October 28, 1997

Decided: January 26, 1998

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in
which Judge Hamilton and Judge Luttig joined.

_____

COUNSEL

ARGUED: Thomas Leo Doran, DECARO, DORAN, SICILIANO,
GALLAGHER, SONNTAG & DEBLASIS, Lanham, Maryland, for

Appellant. Madalyn Elizabeth Johns, GREENBERG & BEDER-
MAN, Silver Spring, Maryland, for Appellee. **ON BRIEF:** Brian J.
Gillette, Andrew E. Bederman, GREENBERG & BEDERMAN, Sil-
ver Spring, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

Delores Konka brought this suit against Wal-Mart Stores, Inc. for
injuries she sustained as a result of a slip-and-fall accident in a Wal-
Mart store. At trial a jury found Wal-Mart liable and awarded Konka
medical expenses only. The district court granted Konka's motion for
a new trial on damages only, and the second jury award included both
medical expenses and non-economic damages. Wal-Mart Stores
appeals the district court's denial of its motions for judgment as a
matter of law and the court's granting of a new trial on damages only.

I.

On Labor Day 1992, Konka and her husband went to the Wal-Mart
in Waldorf, Maryland to shop. It was raining heavily that day, and
when they arrived at the store they noticed that there were extra mats
and safety cones at the front entrance.

After shopping for approximately forty-five minutes, Konka heard
an announcement that ferns were on sale in the lawn and garden
department, which was located in a patio area outside the main store.
The sale piqued her interest, and Konka headed toward that depart-
ment. It was still raining, and the doors to the lawn and garden depart-
ment had been left open. Konka and her husband claimed that there
were no warning cones near the doors and the mat was placed a few

2

feet back from the threshold. An employee stood at a counter immediately adjacent to the doorway.

Konka's husband stopped approximately 20 steps away from the patio door. From there he was able to see that the tile floor in front of the door was shiny and wet. Konka did not observe the wet floor because she was looking at the ferns hanging on display on the patio. When she reached the threshold, Konka slipped and fell to the floor. As she fell, she grabbed the handle of the glass door, wrenching her left shoulder and bumping her head. She landed heavily on her right knee, and stated that her clothes got wet from being on the floor. Immediately after Konka fell, an unidentified Wal-Mart employee came over to see if she was injured and allegedly told Konka that the floor "should have been mopped."

After reporting the incident, Konka went to the emergency room at Southern Maryland Hospital, where she was diagnosed as having a shoulder sprain and referred to Dr. Peter W.S. Yim for further treatment. Dr. Yim testified that the range of motion in Konka's left arm was limited as a result of the fall and that her condition got steadily worse. According to Dr. Yim, by October 1993 Konka's left shoulder had become "frozen" due to scar tissue. Konka did regain some mobility after undergoing physical therapy, but her range of motion and strength in the arm remained severely limited. Both Konka and Dr. Daniel R. Ignacio, her rehabilitation specialist, testified that her left shoulder is atrophied as a result of her injury. Konka testified that her shoulder hurts constantly and she is no longer able to do certain everyday activities, such as moving furniture or lifting her grandchildren. Both Dr. Yim and Dr. Ignacio also stated that, in their opinions, Konka's injuries are permanent and were caused by her fall in Wal-Mart.

The testimony of Wal-Mart's expert witness, Dr. Richard H. Conant, an orthopedic surgeon who examined Konka in May 1996, contradicted that of Konka's doctors on a number of points. Dr. Conant testified that his examination showed no atrophy of the left shoulder and he disputed the severity of the injury. He admitted, however, that Konka did have some restriction of the motion in her left arm.

3

Konka sued Wal-Mart for negligence in state court, and the action was removed to federal court based on diversity jurisdiction. At trial Wal-Mart moved for judgment as a matter of law at the conclusion of Konka's case and again after all evidence had been presented. The district court denied both motions.

The jury returned a verdict in favor of Konka through a special verdict sheet, awarding her $8,471.31 for medical expenses and $0 for non-economic damages. After the verdict was returned, Wal-Mart filed another motion for judgment as a matter of law, which was denied. Konka filed a motion for a new trial on damages only. The district court granted this motion and vacated the jury's damages award. A second trial on damages only was held, with a second jury awarding Konka $34,471.31 in damages. Wal-Mart filed this appeal claiming that the district court erred in failing to grant its motions for judgment as a matter of law and in granting Konka's motion for a new trial on damages only. For the reasons given below, we affirm.

II.

We first examine Wal-Mart's contention that the district court erred in denying its motions for judgment as a matter of law. We review de novo a district court's denial of a motion for judgment as a matter of law. Brown v. CSX Transportation, Inc., 18 F.3d 245, 248 (4th Cir. 1994). The district court may grant a motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the opposing party] on that issue...." F.R.C.P. 50(a). "To grant the motion the district court must examine the evidence in the light most favorable to the non-moving party and determine `whether a reasonable trier of fact could draw only one conclusion from the evidence.'" GSM Dealer Servs., Inc. v. Chrysler Corp., 32 F.3d 139, 142 (4th Cir. 1994) (citing Townley v. Norfolk & W. Ry., 887 F.2d 498, 499 (4th Cir. 1989)). In reviewing a district court's decision on a motion for judgment as a matter of law, this court neither weighs the evidence nor judges the credibility of the witnesses. Id.

Because the accident occurred in Maryland, Maryland law applies. Johnson v. Oroweat Foods Co., 785 F.2d 503, 511 (1986) (citing Hauch v. Connor, 453 A.2d 1207 (Md. 1983)). Under Maryland law,

4

the duty that an owner or occupier of land owes to a visitor depends upon the visitor's status, with the highest duty of care owed to business invitees. Tennant v. Shoppers Food Warehouse, 693 A.2d 370, 374 (Md. Ct. Spec. App. 1997) (citing other cases). Because Konka went to Wal-Mart to shop, she is clearly a business invitee. However, numerous Maryland decisions have stressed the fact that a business invitor is not an insurer of the invitee's safety, and no presumption of negligence on the part of the invitor arises merely from showing an injury occurred in the store. Moulden v. Greenbelt Consumer Services, Inc., 210 A.2d 724, 725 (Md. 1963); see also Tennant, 693 A.2d at 374. The invitor merely has a duty to exercise ordinary care to keep the premises in a reasonably safe condition. Nevertheless, the customer is "entitled to assume that the proprietor will exercise reasonable care to ascertain the condition of the premises and, if he discovers any unsafe condition he will either take such action as will correct the condition and make it reasonably safe or give a warning of the unsafe condition." Rawls v. Hochschild, Kohn & Co., 113 A.2d 405, 407 (Md. 1955); see also Tennant, 693 A.2d at 374 ("The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers.").

Maryland courts, therefore, will find a business invitor liable for physical harm to an invitee caused by a condition of the premises if the invitor: (a) knows or by exercise of reasonable care could discover the condition, (b) should expect that the invitees will not discover the danger, or will fail to protect themselves against it, and (c) invites entry upon the land without (1) making the condition safe, or (2) giving a warning. Mondawmin Corp. v. Kres, 266 A.2d 8, 12-13 (Md. 1970) (citing Restatement (Second) of Torts, § 343); see also Rawls, 113 A.2d at 407; accord Link v. Hutzler Bros. , 335 A.2d 192, 195 (Md. Ct. Spec. App. 1975). The burden is on the invitee to show that the invitor either created the dangerous condition or had knowledge of its existence. Lexington Market Auth. v. Zappala, 197 A.2d 147, 148 (Md. 1964). In this case, the district court properly denied judgment as a matter of law because Konka presented sufficient evidence for a reasonable jury to conclude that Wal-Mart either knew about the wet condition or caused it.

Either actual or constructive knowledge of the wet condition is sufficient for Wal-Mart to be deemed to "know" of the condition for lia-

5

bility purposes. See Mondawmin Corp., 266 A.2d at 12. Wal-Mart correctly contends that there is no evidence that its employees had actual knowledge of the wet conditions in the doorway. The Wal-Mart employees who testified at trial stated that they did not observe any wet spots on the floor by the patio door prior to the accident. The only evidence that suggests an employee may have been aware of the condition is Konka's own testimony that a female employee told her after the accident that the wet area "should have been mopped." This employee was never identified, however, and -- even assuming the statement was made in the manner described by Konka-- such a statement would still not establish without conjecture that that employee had actual knowledge of the water without a further indication that the employee was aware of the wet spot before Konka fell or had told someone about it. Compare Burwell v. Easton Mem. Hosp., 577 A.2d 394, 397 (Md. 1990) (nurse's statement that "someone should have cleaned it up" permitted no reasonable inference that hospital had actual or constructive knowledge of salad on stairs before plaintiff fell), with Keene v. Arlan's Dept. Store, 370 A.2d 124 (Md. 1977) (cashier's statement that "I told them if this wasn't cleaned up, someone's going to fall" was sufficient evidence to allow case to go to the jury).

Even though Wal-Mart did not have actual knowledge of the wet area, however, there was enough evidence for a jury to have rationally concluded either that Wal-Mart had constructive knowledge of the floor's wet condition before Konka fell or that Wal-Mart's own actions caused the water to be there. A business invitor is deemed to have constructive notice of a hazardous condition on its premises when "it appears that the storekeeper could have discovered the condition by the exercise of ordinary care ...." Rawls, 113 A.2d at 409. Whether a storekeeper was reasonable in failing to discover a hazardous condition is a question of fact, which "requires a consideration of the nature of the condition, its foreseeable consequences, the means and opportunities of discovering it, the diligence required to discover and correct it, and the foresight which a person of ordinary prudence would have exercised under similar circumstances." Id. at 410.

The mere fact that the lawn and garden department manager and an employee at the nearby counter were in close proximity to the wet spot is not in itself sufficient to establish any kind of notice. Lusby

6

v. Baltimore Transit Co., 72 A.2d 754, 756 (Md. 1950) (affirming dismissal of a slip and fall claim even though the greasy spot on bus that plaintiff slipped in would have been visible to the driver had he looked, because there was no evidence that the driver actually saw substance or that it was there long enough for driver to be deemed to have constructive notice of it). However, looking at the evidence in the light most favorable to the non-moving party, as we are required to do in a motion for judgment as a matter of law, sufficient evidence was presented for a jury to have reasonably concluded either that the wet spot was "placed" there by Wal-Mart because rain water blew in through the open door, or that some employee did have a special duty to observe the area and watch for hazards.

Although Konka testified that no rain water blew in on her during the time she laid on the floor after her fall, rain may have blown in earlier or flowed in from the patio area. Contradictory evidence was given concerning the length of the overhang over the lawn and garden department patio and, in light of the evidence of heavy rain that morning, a jury would not have been unreasonable in assuming that a shorter overhang length coupled with a heavy rain could have resulted in a puddle forming inside the open patio door. Wal-Mart's actions in leaving the door open during the rain therefore arguably could have caused the wet condition on which Konka slipped.

In the alternative, the jury could reasonably have found that Wal-Mart should have known about the condition. The record shows that the store's greeter testified that it was her duty to call maintenance for mats and warning cones in case of inclement weather, and that she had briefly checked the area on her way to her break at 11:00. The lawn and garden department manager also testified that it was his responsibility to maintain the area. Both employees were aware that it was raining heavily outside and that the door to the patio was open. Based on these facts, it appears that there was sufficient evidence to create a triable issue of fact of whether Wal-Mart employees should have been deemed to be on constructive notice of the wet and hazardous condition.

Because the evidence, when viewed in the light most favorable to Konka, is sufficient for a jury to have reasonably concluded that Wal-Mart either created the dangerous condition or had constructive

7

knowledge of it, we hold that the district court did not err in refusing to grant Wal-Mart's motions for judgment as a matter of law.

III.

Wal-Mart next contends that the district court erred in granting a new trial on damages only. The standard by which this court determines motions for a new trial was first set forth in Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 352-53 (4th Cir. 1941), and has been cited numerous times since:

> On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right.

See also Gill v. Rollins Protective Servs. Co. , 836 F.2d 194, 196 (4th Cir. 1987) (listing cases and secondary sources which cite this language with approval). Recognizing that the district judge may weigh the evidence presented and assess the credibility of witnesses, and therefore possesses an intimate knowledge of the case that the appellate court can never match, this court will not disturb the district court's decision to grant a new trial absent a clear abuse of discretion. See Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994).

The weight of the evidence here clearly indicates that Konka suffered permanent damage to her left shoulder as a result of her fall in Wal-Mart, and that this injury has caused her pain and left her unable to continue with the full range of activities she enjoyed prior to the accident. The first jury's decision to award her no non-economic damages for pain and suffering therefore runs counter to the clear weight of the evidence.

8

Wal-Mart did present some evidence that Konka's shoulder injuries were not as severe as she claimed and that she had had shoulder problems prior to her fall. Evidence of a prior shoulder injury came from a Wal-Mart employee, who testified that after she fell Konka mentioned that her shoulder had "gone out" before. In addition, Dr. Conant, Wal-Mart's expert witness, testified that his examination showed no muscle atrophy and that, in his opinion, Konka's limitation of movement and pattern of doctor visits were not consistent with someone who had an allegedly severe shoulder injury.

However, it does not appear that the district court abused its discretion in finding that this evidence was insufficient to counterbalance the evidence suggesting Konka suffers permanent limitations and pain as a result of her accident. The Wal-Mart employee's claim that Konka had had problems with her shoulder prior to her fall was unsubstantiated by any other evidence, and -- even if she did have trouble with her shoulder prior to the accident-- there was no evidence presented that her entire current disability is a result of such pre-accident problems and was not at least exacerbated by her fall. In addition, while Dr. Conant disputed the severity of Konka's injuries, he nonetheless admitted that she showed at least some limitation in the range of motion in her injured shoulder. Furthermore, in addition to the medical testimony Konka presented supporting her claim of injury, the record shows that Konka herself demonstrated for the district court how limited her range of motion was in the affected arm.

Based on this nearly undisputed evidence that Konka suffered at least some degree of permanent disability as a result of her fall in Wal-Mart, we conclude that the district court did not abuse its discretion in finding that the failure of the first jury to award any non-economic damages was against the clear weight of the evidence. We therefore affirm the district court's granting of a new trial on damages only and the second jury award of $34,471.31.

IV.

In conclusion, we hold that the district court did not err in refusing to grant Wal-Mart's motions for judgment as a matter of law because there was sufficient evidence for a jury to have reasonably concluded that Wal-Mart either created or could be deemed to have constructive

notice of the hazardous condition. We also hold that the district court did not abuse its discretion in finding that the original jury award was against the clear weight of the evidence because it failed to compensate Konka for the permanent injuries she suffered as a result of her fall. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

10