REISER *v.* ABRAMSON t/a Blair Towers Apartments

[No. 127, September Term, 1971.]

*Decided January 24, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Allan Sosslau,* with whom were *Stanley L. Lipshultz* and *Friedman & Lipshultz* on the brief, for appellant.

*William H. Clarke,* with whom was *Matthew J. Kastantin* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. HAMMOND, C. J., dissents and filed a dissenting opinion at page 379 *infra.*

Appellant, Blanche Reiser (Mrs. Reiser), complains here because her claim against appellee, Albert Abramson t/a Blair Towers Apartments (Abramson), for damages sustained in a fall on Mother's Day, 1970, in appellee's apartment house was taken from the jury on two bases, contributory negligence and failure to show negligence on the part of the defendant. We shall reverse the ensuing judgment and remand for trial.

Mrs. Reiser apparently slipped as a result of water

on the floor. The incident occurred in the seventh floor laundry room. Mrs. Reiser's version of the accident came in response to a question as to whether she looked around the area where she fell to see why she fell. She replied:

> "Well, I guess. I laid on the floor for a few minutes and then I turned my head to see what had happened because I was so dazed and it was such a shock. * * * I noticed there was water coming from the first laundry machine. * * * It seemed to be coming from the first machine. * * * I was in considerable pain, but it seemed to me it was about a foot square, I would say."

She did not think the water had a coloration of its own. The laundry facilities were provided for the use of the tenants on that floor and consisted of two washers and two dryers. Mrs. Reiser said she was looking at the floor in front of her when she entered the laundry room, but she did not see the water on the floor prior to her fall. The laundry room was said to have been equipped with ceiling fluorescent lights which lit it more brightly than the hall from which Mrs. Reiser entered, which she claimed affected her vision adversely.

A friend of Mrs. Reiser testified she went over to see Mrs. Reiser as soon as she heard of her injury. The accident was placed as having taken place "[a] little after noon." It was "about 1:00 o'clock" on the day in question when Mrs. Reiser called her friend to inform her of the accident. The witness then went there immediately. Travel time consumed approximately five minutes. Out of curiosity, the friend decided to go to the laundry room prior to going to the Reiser apartment. She said that at that time she found a puddle of water on the laundry room floor.

A maid for one of the other tenants in the building noted water on the floor in the laundry room about two or three weeks before Mother's Day and again on the

Wednesday immediately before Mother's Day. She claimed to have notified the proper person. Wednesday before Mother's Day in 1970 was May 6. It is conceded that a water pump gasket in one of the washing machines was replaced on May 4, 1970, because of complaints made relative to that machine's leaking.

In ruling upon Abramson's motion for a directed verdict, the trial judge said:

> "I have gone over the cases referred to me by counsel for both sides and have considered the evidence presented by the plaintiff and the defendant and find that under the law, as I see it, there was no continuing duty on the part of the apartment house, the defendant herein, to continue to check the washing machine in the seventh floor wash room after it repaired it on the 4th of May, and I find that no notice was given to the defendant and that a directed verdict in its favor would have to be granted on that ground.
>
> "But I also find that there was contributory negligence on behalf of the plaintiff, and I refer to the cases cited."

She then referred to *Hynes v. Hutzler Bros. Co.,* 261 Md. 345, 276 A. 2d 99 (1971), a quotation in that case from *Fulton Building Co. v. Stichel,* 135 Md. 542, 109 A. 434 (1920), where Chief Judge Boyd said that if the defendant had used his eyes he could have seen the spikes, and to Chief Judge Prescott's comment for the Court in *So. Md. Electric v. Blanchard,* 239 Md. 481, 485, 212 A. 2d 301 (1965), "It is a fundamental principle of negligence law that a person must use his Providence-given senses to avoid injury to himself." Judge Shook then said:

> "In this case the plaintiff herein had used the laundry room before, she lived at the apartment for some little time, she knew the lighting of the halls, she knew the lighting of the washing

machine room, laundry room and, certainly, knew the purpose for which the room was used.

"Knowing the reason for which the room was used and the purpose for which the room was used she could reasonably expect that there might be water on the floor.

"So, The Court finds her as a matter of law contributorily negligent, which would bar her from recovery.

"Even if I had not ruled in the first instance that there was no notice to the defendant I would have ruled on this."

In determining whether the court erred in directing a verdict against Mrs. Reiser we must consider the evidence in a light most favorable to her, resolving all conflicts in her favor, and assuming the validity of all inferences which naturally and legitimately may be drawn from such evidence. A verdict for a defendant must not be granted if there is any legally relevant and competent evidence from which a rational mind can infer a fact at issue. *Vroom v. Arundel Gas Co.*, 262 Md. 657, 659, 278 A. 2d 563 (1971).

On cross-examination counsel for Abramson elicited the following from the maid for another seventh floor tenant who testified:

"Q. When you saw the water on the floor was two or three weeks before that Mother's Day; wasn't it? A. Yes, that is right.

"Q. On the Wednesday right before Mother's Day, three or four days before then when you used it, there wasn't any water on the floor? A. There was water on the floor.

"Q. On the Wednesday before Mother's Day? A. Yes.

"Q. What did you do about it? A. I called Mrs. Anderson.

* * *

"Q. It was proper lighting there in the laun-

dry room? A. Yes, the lights are bright. They are brighter in the laundry room than they are in the hall."

Mrs. Anderson was the switchboard operator to whom such matters were normally reported. It follows, therefore, that there was evidence of a defect and of a report of it prior to the instance in question and subsequent to the date on which it was said to have been fixed. It is true, as claimed by Abramson, that the testimony of the maid was somewhat contradictory, but the testimony was not so contradictory as to justify a ruling as a matter of law that it was incredible and should be disregarded. It is to be noted that the trial judge in her ruling did not specify that this testimony could not be believed, but made a finding that no notice was given to the defendant, a finding contrary to evidence in the case.

The burden of proving contributory negligence is on the defendant. *Baltimore & O.R.R. v. Plews,* 262 Md. 442, 454, 278 A. 2d 287 (1971). As we observed in *Rogers v. Frush,* 257 Md. 233, 239, 262 A. 2d 549 (1970), "It is not every action on the part of a litigant which an opponent by way of 'second guessing' or hindsight may successfully label as contributory negligence." Also, as this Court said in *Abraham v. Moler,* 253 Md. 215, 252 A. 2d 68 (1969) :

> "Contributory negligence is an affirmative defense which was available to appellants and they had the burden of proving not only that a reasonably prudent person would, in the circumstances, have taken certain precautions but also that Mrs. Moler failed to take those precautions and that her failure so to do directly contributed to her injury." *Id.* at 218.

The question of contributory negligence must be considered in the light of all the inferences favorable to the plaintiff's case that may be fairly deduced from the evidence. Where there is a conflict of evidence as to ma-

terial facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury. In order that a case may be withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds. *Baltimore & O.R.R. v. Plews, supra,* at page 454, citing *Balto. Transit Co. v. Castranda,* 194 Md. 421, 434, 71 A. 2d 442 (1950).

Water is a colorless liquid. The testimony here is that that which was on the floor was in fact colorless. As we recognized in *Mondawmin Corp. v. Kres,* 258 Md. 307, 318, 266 A. 2d 8 (1970), it often is not visible to the naked eye. Its visibility depends upon the angle at which it is viewed and the direction from which light comes. The case is remarkably similar to *Suitland Manor v. Cadle,* 257 Md. 230, 262 A. 2d 529 (1970), where we declined to disturb a jury verdict although the trial judge said if the case had been tried by him without a jury he would not have reached the same conclusion the jury reached. It is also similar to *Honolulu Ltd. v. Cain,* 244 Md. 590, 224 A. 2d 433 (1966), where the plaintiff "slipped on a thin glaze of ice which had formed on the black macadam surface of [a] parking lot" and this Court declined to hold the plaintiff contributorily negligent as a matter of law. It is distinguishable from *Sugar v. Traub,* 233 Md. 320, 196 A. 2d 869 (1964), (another "water" case) where the plaintiff said she walked without looking. On the basis of her admitted failure to look, this Court held plaintiff guilty of contributory negligence as a matter of law. The failure to see water or ice when one has looked is much different from the failure to see such a clearly visible object as the approaching train in *Sears v. Baltimore & O.R.R.,* 219 Md. 118, 148 A. 2d 366 (1959), or the clearly visible objects in the cases cited by the trial judge, *Hynes, So. Md. Electric,* and *Fulton Building Co.* In *Hynes* there was a failure to see the

man with whom the plaintiff collided. In *So. Md. Electric* there was the failure to see an uninsulated electric wire with which a television aerial came into contact. In *Fulton Building Co.* the plaintiff failed to see the spikes on top of an iron mesh work upon which his hand became impaled.

Here we do not know if the object was clearly visible. Mrs. Reiser said that she looked. Whether she in fact looked and whether if she looked she would have seen the water became questions for the jury. There was no prominent and decisive act or omission on the part of Mrs. Reiser which it could be said as a matter of law directly contributed to the accident. In short, reasonable minds could differ as to whether Mrs. Reiser observed ordinary care for her own safety.

> *Judgment r e v e r s e d, with costs, and case remanded for a new trial.*

Hammond, C. J., dissenting:

If the rule that any negligence, however slight, on the part of a plaintiff will bar his recovery has outlived its usefulness, it should be modified or abolished by the legislature, but as long as it remains in force (even if only theoretically) it should be applied evenly. I do not think it was in this case.

The plaintiff knew that laundry room floors from time to time may well be wet. Indeed, she complained in her testimony that the water she says caused her to fall had not run down into the drain that had been put in the floor to permit spilled water to run off, acknowledging thus that often there would be water on the laundry room floor that should have been drained off.

The plaintiff said she was well acquainted with the laundry room and its floor and bright lighting. At least two other persons said they had seen water on the floor from a standing position, one a fellow tenant and friend, and the other the apartment house employee. The plain-

tiff will not be heard to say she looked and did not see because she could have seen had she looked. She barely says, even under pressing leading questions, that she even looked. Most of her testimony was "guessing." She was asked: "* * * where [were] you looking when you looked into the laundry room." Her answer was: "Ahead of me on the floor, I guess." She was asked: "was there anything to obscure your vision of the water on the floor." The best she could do was to answer: "I don't know."

Obviously she did not look when she went into a familiar, well lighted place which she knew might have water on the floor, water which she could have seen if she had looked and which she did not see because she did not look. She was the author of her own misfortune and, assuming primary negligence, which is extremely doubtful, cannot recover because she was contributorily negligent as a matter of law.

I would affirm.