JOHN A. BERZUPS *v.* H. G. SMITHY COMPANY
ET AL.

[No. 869, September Term, 1973.]

*Decided July 17, 1974.*

The cause was argued before THOMPSON, GILBERT and MOORE, JJ.

*Alan M. Perlman* for appellant.

*Michael J. Budow,* with whom were *Joseph Patrick Clancy, Allan A. Nobel* and *Clancy & Pfeifer* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

John A. Berzups, appellant, sued his landlords and their management agent, appellees, for personal injuries, alleging that the landlords were guilty of negligence, maintenance of a nuisance and breach of contract. The Circuit Court for Montgomery County, Judge Ralph G. Shure presiding, granted a motion for a directed verdict on the basis that Mr. Berzups had failed to prove negligence or nuisance and, in addition, that he was guilty of contributory negligence as a matter of law. Resting our decision upon the basis that Mr. Berzups was guilty of contributory negligence, we affirm the judgment.

Mr. Berzups resided in Apartment No. 110, 8712 Colesville Road, Silver Spring, Maryland, from August 1967 until January 9, 1969, the date of the accident involved in these proceedings. Mr. Berzups testified that as he left the apartment building to go to work, at about 7:20 a.m. on January 9, 1969, he fell and suffered substantial injuries. He stated that immediately prior to the accident he had left his apartment and walked to the lobby and through the front door when he stepped on some ice in a crack in the front step. The crack was about two inches wide and about ten inches long. The mat which was usually on the front step was not present on this occasion; he stated that at times the mat was moved to the side of the step for washing and cleaning. The steps were a part of the area under the control of the appellees for the common use of their tenants.

Mr. Berzups' testimony is so devastating to his cause, that we set it out:

"Q. Now, you continued on out the door, the right hand door. How many steps did you take before you fell?

A. I made about a couple of steps.

Q. Do you recall which foot it was that you stepped in the crack?

A. It was my right foot.

Q. And you say there was ice in there, is that correct?

A. Yes, sir.

Q. Now, you were looking down as you walked, were you not?

A. I was looking down.

Q. And you were looking where you were walking?

A. Yes, sir.

Q. And you saw this crack before you stepped in it?

A. I saw the crack and other cracks also on the step.

Q. Also, you put your foot in the crack to take a step, is that correct?

A. I walked normally and I put my step into the crack and fell down, slipped and fell down.

\* \* \*

Q. Now, did you notice anything else on the step other than that crack?

A. I noticed on the step, other than cracks, ice.

Q. The step was not completely covered with ice, though, was it?

A. No, sir.

Q. And you made no effort to step over or away from this crack, did you?

A. As I said I walked normally, reasonably, normally, and I stepped just over the crack and fell down.

Q. I am not sure I understood you, Mr. Berzups. Did you say you stepped over or in?

A. Yes, I stepped in the crack, normally, normal, walking on the step.

Q. You could have stepped over or around the crack, though, couldn't you?

A. As I normally walked I stepped in the crack, let us say.

Q. If you didn't walk normally, Mr. Berzups, could you have avoided this crack, without walking normally?

A. There were around several cracks and several places of ice.

Q. You could have avoided the crack, could you not have?

A. No, I couldn't avoid it.

Q. You couldn't step over it?

A. But then I would step in the other crack with ice.

Q. Did you see ice in all the cracks?

A. Around very many cracks and many ice. There were around many cracks and many ice.

\* \* \*

Q. I see. Now, there wasn't very much ice around this hole that you stepped in, was there?

A. There was not much.

Q. Right around the hole itself there was not much?

A. Yes, sir.

Q. I am not sure. I want to make sure we understand. There was very much, very little ice around the hole itself?

A. Yes, sir.

Q. There was very little ice?

A. That's right.

Q. Did you make any effort to step on the area right next to the hole?

A. I walked normally, and I stepped into the crack and fell down.

Q. My question is did you make any effort to step in the area right next to the hole?

A. It was not necessary, because I was reasonably walking.

Q. You say you were reasonably walking?

A. Yes, sir.

Q. I see. What you are saying is that this area was not a dangerous area?

A. I never think that it is dangerous. It wasn't then.

\* \* \*

Q. It was the ice that caused you to fall, isn't that correct?

A. That's right."

In reviewing the propriety of the lower court's ruling on a motion for directed verdict, this Court must consider the evidence and all reasonable inferences to be drawn therefrom in a light most favorable to the party against whom the motion is made. *Clayborne v. Mueller*, 266 Md. 30, 33, 291 A. 2d 443 (1972); *Berg v. Merricks*, 20 Md. App. 666, 669 n. 1, 318 A. 2d 220 (1974). It is further required that:

"In order to withdraw a case from the jury on the ground of contributory negligence, the evidence must show some permanent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds." *Rooney v. Statewide Plumbing*, 265 Md. 559, 564, 290 A. 2d 496 (1972).

"A verdict for a defendant must not be granted if there is any legally relevant and competent evidence from which a rational mind can infer a fact at issue." *Reiser v. Abramson*, 264 Md. 372, 376, 286 A. 2d 91 (1972).

Prosser stated it well, when he said ". . . where enough uncertainty can be conjured up to make an issue as to what the reasonable man would have done, that issue goes to the jury." W. Prosser, *Torts* 420 (4th ed. 1971).

In reviewing the testimony, it is patent that Mr. Berzups saw the ice, which he testified caused his fall, and could have stepped in a spot which was not covered by ice, thereby avoiding the accident. That he voluntarily chose an unsafe route is manifest from the testimony quoted at length above. Having seen the ice, and having decided not to pursue the safer route, he, an adult in full command of his faculties, cannot now be heard to say that he did not comprehend the risk. When knowingly faced with a danger, a plaintiff who eschews the safe route to voluntarily and knowingly

encounter the danger will do so at his legal and physical peril. ". . . [A] party cannot walk upon an obstruction which has been made by the fault of another and avail himself of it, if he did not himself use common and ordinary caution." *Sutton v. Mayor and City Council of Baltimore*, 214 Md. 581, 584, 136 A. 2d 383 (1957).

The Maryland Court of Appeals has repeatedly found that plaintiffs with knowledge of a danger who disdain to follow a safe route in order to encounter an appreciated danger via a different route are contributorily negligent as a matter of law.[1] In *Eyler v. Adolph Beauty System, Inc.*, 238 Md. 227, 208 A. 2d 609 (1965), the plaintiff was found to be contributorily negligent as a matter of law when, instead of stepping onto a sidewalk at a point which was visible and clear of ice, he chose to step onto it where the curb was covered with ice twelve to eighteen inches wide and two to twelve inches high. The following quotation is particularly apropos:

> "[Judge Menchine] then held that the claimant was himself so markedly negligent that he could not, as a matter of law, recover damages because: (1) he knew of the general icy conditions; (2) he saw the frozen strip or ridge on the sidewalk, as well as the clear strip of sidewalk between the curb and the frozen ridge; (3) he saw the clear strip of sidewalk on the far side of the ridge, but did not stop on the near clear strip and choose a place to the left or right, where he might have crossed without stepping on the ice; and (4) without hesitating or planning his course, he elected to step on the frozen ridge, encumbered as he was with a baby, a pack of bottles and two children with whose safety he was concerned. The record supports the findings of fact and the cases support Judge Menchine's views of

---

[1]. This is in accord with the Restatement (Second) of Torts § 466 (a) (1965), which defines as one type of contributory negligence an intentional and unreasonable exposure of himself to danger created by the defendant's primary negligence, of which danger the plaintiff knows or has reason to know.

the applicable law. *Sugar v. Traub, supra; McManamon v. High's Dairy Products Corporation,* 230 Md. 370; *Tyler v. Martin's Dairy, Inc.,* 227 Md. 189; *Sutton v. Baltimore, supra;* and *Duross v. M. & C. C. of Balto.,* 136 Md. 56." *Id.* at 229.

In *Craig v. Greenbelt Consumer Services, Inc.,* 244 Md. 95, 97-98, 222 A. 2d 836 (1966), the plaintiff, who testified that she saw sawdust on the floor of a supermarket aisle, knew it to be slippery but walked through it anyhow, was held contributorily negligent as a matter of law. In *McManamon v. High's Dairy Products Corp.,* 230 Md. 370, 187 A. 2d 318 (1963), the plaintiff testified that she noticed that the floor in front of the refrigerator was damp. The Court held that her choice to walk on a treacherous surface, rather than to avail herself of safer means constituted contributory negligence as a matter of law. *Cf. Suitland Manor v. Cadle,* 257 Md. 230, 262 A. 2d 529 (1970), which distinguished itself from *Craig v. Greenbelt Consumer Services, supra,* in that the *Suitland* case did not involve a voluntary choice of routes, one of which was safe.[2]

Appellant cites several cases involving the question of whether a failure to see the dangerous objects constituted contributory negligence. These cases are inapposite because in the instant case, the plaintiff admitted that he looked and saw the ice but chose to encounter it. In each of the cases cited the Court held that the failure to see the object presented a jury question as to contributory negligence. *Snider v. Senneville,* 267 Md. 552, 558, 298 A. 2d 175 (1973) (a tool box temporarily placed in a housewife's living room); *Reiser v. Abramson, supra* at 379 (water); *Mondawmin Corporation v. Kres,* 258 Md. 307, 319-20, 266 A. 2d 8 (1970) (water); *Hutzler Bros. Co. v. Taylor,* 247 Md. 228, 239-40, 230 A. 2d 663 (1967) (a depression in macadam); *Honolulu Ltd. v. Cain,* 244 Md. 590, 599, 224 A. 2d 433 (1966) (ice). Of course, contrary results have been reached in cases involving the failure to see clearly visible objects. *Hynes v. Hutzler Bros.*

---

2. For a recent annotation discussing the effect of plaintiff's knowledge of a dangerous condition upon the liability of the possessor of land upon which the condition exists, see Anno:, 35 A.L.R.3d 230, 262-65 (1971).

*Co.,* 261 Md. 345, 348, 276 A. 2d 99 (1971) (man); *Sears v. B. & O. Railroad,* 219 Md. 118, 123, 148 A. 2d 366 (1959) (train); *Fulton Building Co. v. Stichel,* 135 Md. 542, 549, 109 A. 434 (1920) (spike on top of an iron mesh work).

In the instant case, the appellant admitted that he saw the ice and that he could have avoided stepping on it, but he chose not to do so. As we have indicated, the law is firmly established that he cannot be heard to contend that he did not appreciate the danger; he was contributorily negligent as a matter of law.

There is no need for us to discuss any of the other issues presented.

*Judgment affirmed.*
*Appellant to pay the costs.*