724 A.2d 1272

**UNION MEMORIAL HOSPITAL**

v.

**Sally E. DORSEY.**

**No. 551, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Feb. 26, 1999.

278

Edward P. Murphy (Allewalt & Murphy, P.A., on the brief), Baltimore, for appellant.

George S. Jarosinski (Leo W. Dymowski and Hassan, Hassan & Tuchman, P.A. on the brief), Baltimore, for appellee.

Before MURPHY, C.J., and HOLLANDER and VICTOR K. BUTANIS (specially assigned), JJ.

VICTOR K. BUTANIS, Judge, Specially Assigned.

Sally E. Dorsey, appellee, filed a one count complaint in the Circuit Court for Baltimore City alleging negligence on the part of Union Memorial Hospital, appellant. Following a jury trial, Ms. Dorsey was awarded $11,202.70 in economic damages and $120,000 in non-economic damages. Union Memorial Hospital noted a timely appeal and, for our review, presents three questions, which we have rephrased slightly:

I. Did the trial court abuse its discretion in determining that, as a matter of law, appellee was not contributorily negligent?

II. Did the trial court abuse its discretion in denying appellant's motion *in limine* to preclude appellee from introducing evidence at trial that she had failed to provide in her answers to interrogatories?

III. Did the Administrative Judge abuse his discretion in twice deferring dismissal of this case under Rule 2–507 after expiration of the date set for trial on his first order deferring dismissal?

We answer appellant's first question in the affirmative and reverse and remand the case for a new trial. For the guidance of the trial court, we also address the second question and are unable to discern any abuse of discretion. Finally, we reach appellant's third question because a violation of Rule 2–507 would have required dismissal of the case. Perceiving no abuse of discretion on the part of the Administrative Judge in deferring, several times, operation of that Rule, we answer the third question in the negative.

## FACTUAL BACKGROUND

On the afternoon of May 20, 1991, Ms. Dorsey and Wanda Allen, who were employed by Maryland National Bank, went to an automatic teller machine (ATM) located in Union Memorial Hospital (Union Memorial or the Hospital) to replenish the machine with money, paper, and envelopes. At the Hospital, they found the room that led to the ATM to be filled with fifteen to twenty bags of trash. At trial, Ms. Dorsey testified that a gurney was also in the room, cole slaw and potato salad were on the floor, and liquid was leaking from the garbage bags. Ms. Allen entered the room and began moving the bags to clear a path to the ATM. Ms. Dorsey followed behind her. [*Id.*] While they were moving the garbage bags, Ms. Dorsey slipped and fell to the floor. Ms. Allen testified that Ms. Dorsey slipped on some liquid leaking from the bags. Ms. Allen also stated that Ms. Dorsey "got caught up in" the bags

as they were moving them out of the way. Ms. Dorsey testified that she was following Ms. Allen when she slipped on one of the bags and fell, striking her right knee. She explained that her shoe got caught on one of the bags. Ms. Dorsey added that she was not sure if she slipped on the liquid on the floor or if her foot became caught in a bag, but stated that she did not realize a liquid was on the floor until she ended up lying in it after the fall.

On several prior occasions, Ms. Dorsey and Ms. Allen had found the room filled with trash and had maintenance personnel move the garbage out of the way. They also complained to a maintenance worker, a maintenance supervisor, and the bank manager about the trash in the room. Although Ms. Dorsey had waited for maintenance personnel to clean the room on prior occasions, she had to reach a lock on the ATM by a certain time or the police and FBI would be alerted automatically. She explained that if she waited for the maintenance personnel, she was "going to get balled out...." Prior to entering the room on the date in question, Ms. Dorsey did not ask anyone from the Hospital to move the garbage bags for her.

We will include additional facts as necessary in our discussion of the questions presented.

### DISCUSSION

### I.

Union Memorial contends that the trial court abused its discretion in declining to instruct the jury on the defense of contributory negligence and in deciding that Ms. Dorsey was not contributorily negligent as a matter of law. The Hospital claims that as Ms. Dorsey saw the debris scattered about the room and had previously required maintenance personnel to clean the room, but did not ask maintenance personnel for assistance on this particular occasion and voluntarily entered the room on the date she fell, the question of her contributory negligence should have been submitted to the jury. Union Memorial further claims that the evidence presented at trial

supported a finding that Ms. Dorsey was contributorily negligent as a matter of law because she realized the risks and voluntarily chose to negotiate them.

" 'Contributory negligence is the failure to observe ordinary care for one's own safety. "It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." ' " *Menish v. Polinger Co.*, 277 Md. 553, 559, 356 A.2d 233 (1976) (quoting *Kasten Constr. Co. v. Evans*, 260 Md. 536, 541, 273 A.2d 90 (1971) (quoting *Potts v. Armour Co.*, 183 Md. 483, 490, 39 A.2d 552 (1944))). "Ordinarily, the question of whether the plaintiff has been contributorily negligent is for the jury, not the judge, to decide." *Campbell v. Baltimore Gas & Elec. Co.*, 95 Md.App. 86, 93, 619 A.2d 213, *cert. denied*, 331 Md. 196, 627 A.2d 538 (1993). If the plaintiff was contributorily negligent, it will bar her recovery. *Casper v. Charles F. Smith & Son, Inc.*, 71 Md.App. 445, 472, 526 A.2d 87 (1987). The defendant carries the burden of proving that the plaintiff was contributorily negligent. *Moodie v. Santoni*, 292 Md. 582, 586, 441 A.2d 323 (1982).

> If there is any evidence, however slight, legally sufficient as tending to prove contributory negligence, the weight and value of that evidence must be left to the jury. To be legally sufficient, the evidence must be beyond "a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture. . . ."

*Chudson v. Ratra*, 76 Md.App. 753, 756, 548 A.2d 172 (1988), *cert. denied*, 314 Md. 628, 552 A.2d 894 (1989) (quoting *Fowler v. Smith*, 240 Md. 240, 247, 213 A.2d 549 (1965)). Only when the minds of reasonable persons cannot differ is the court justified in deciding the question of a plaintiff's contributory negligence as a matter of law. *Moodie*, 292 Md. at 589, 441 A.2d 323. " '[I]f there is no evidence of acts or conduct from which reasonable minds could find or infer negligence on the part of a plaintiff, it would be error not to withdraw the issue of contributory negligence from the consideration of the

jury.'" *Id.* at 589–90, 441 A.2d 323 (quoting *Wiggins v. State, Use of Collins,* 232 Md. 228, 237, 192 A.2d 515 (1963)).
But before a plaintiff can be held to be free of contributory negligence as a matter of law, "the truth of all the credible evidence tending to sustain the claim of [contributory] negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish [contributory] negligence drawn."

*Chudson,* 76 Md.App. at 756, 548 A.2d 172 (quoting *Fowler,* 240 Md. at 246, 213 A.2d 549).

 The flip side of this question, *i.e.,* whether the plaintiff was contributorily negligent as a matter of law, "must be considered in the light of all the inferences favorable to the plaintiff's case that may be fairly deduced from the evidence. Where there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury. In order that a case may be withdrawn from the jury on the ground of contributory negligence, the *evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds."*

*Menish,* 277 Md. at 563, 356 A.2d 233 (quoting *Reiser v. Abramson,* 264 Md. 372, 377–78, 286 A.2d 91 (1972)) (emphasis added). "The prominent and decisive act or omission must reveal that the injured party was or should have been aware of a dangerous situation and failed to exercise ordinary care to protect himself." *G.C. Murphy Co. v. Greer,* 75 Md.App. 399, 402, 541 A.2d 996 (1988).

 In responding to the Hospital's request for an instruction on contributory negligence, the trial court discussed the case, to some degree, in terms of assumption of the risk. These affirmative defenses, although closely intertwined, are distinct concepts. *See Schroyer v. McNeal,* 323 Md. 275, 280, 592 A.2d 1119 (1991) (citations omitted) ("Assumption of the

risk and contributory negligence are closely related and often overlapping defenses. They may arise from the same facts and, in a given case, a decision as to one may necessarily include the other."); *Hooper v. Mougin,* 263 Md. 630, 633, 284 A.2d 236 (1971) (distinction between contributory negligence and assumption of the risk "is slight, often difficult to pinpoint and usually of little practical significance; however, this Court has recognized that some legal difference exists"); *Warner v. Markoe,* 171 Md. 351, 359–60, 189 A. 260 (1937) ("Contributory negligence . . . means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntary incurring [the risk] of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs.")

■ Although the trial court did not instruct on either contributory negligence or assumption of the risk, we limit our discussion to the propriety of the trial court's conclusion that Ms. Dorsey was not contributorily negligent as a matter of law, thus declining to instruct the jury on contributory negligence. We do so for two reasons. First, although Union Memorial submitted a proposed instruction on assumption of the risk, it did not object to the court's failure to so instruct the jury. *See* Md. Rule 2–520(e) ("No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.") Second, before this Court, Union Memorial contends only that the trial court erred in failing to give an instruction on contributory negligence and/or in failing to find that Ms. Dorsey had been contributorily negligent as a matter of law. *See* Md. Rule 8–504(a)(3) & (5) (party is required to set forth a statement of questions presented, the legal propositions involved, and argument in support of the party's position); *Jacober v. High Hill,*

*Realty, Inc.,* 22 Md.App. 115, 125, 321 A.2d 838, *cert. denied,* 272 Md. 743 (1974) (argument not presented in brief will not be considered on appeal).

Turning to the facts in the present case, Ms. Dorsey testified that she saw the garbage bags strewn about, the cole slaw and potato salad on the floor, and a liquid leaking from the bags, but still entered the room. Although no testimony was presented at trial regarding the lighting conditions in the room, Ms. Dorsey and Ms. Allen testified that they could clearly see the debris. In contrast, the defense presented several answers to interrogatories, which were stipulated to be Ms. Dorsey's answers and were signed by Ms. Dorsey under oath. One of the interrogatories stated that the room she entered was dark and that "she was required to walk into this area to turn the light on and this is when the fall occurred." In view of Ms. Dorsey's knowledge of the conditions in the room, the questions concerning the lighting in the room, and her decision to encounter the apparent hazards, reasonable minds could differ on whether Ms. Dorsey was contributorily negligent in entering the room. As a result, the trial court erred in determining that Ms. Dorsey was not contributorily negligent as a matter of law and in removing that question from the jury's consideration. *Compare Menish,* 277 Md. 553, 568–69, 356 A.2d 233 (issue of plaintiff's contributory negligence was properly submitted to jury where plaintiff slipped and fell on icy walk, but plaintiff had no knowledge of icy condition or that icy condition was likely to form and that ice was invisible due to its transparency); *Suitland Manor Owner's Assoc., Inc. v. Cadle,* 257 Md. 230, 232, 262 A.2d 529 (1970) (where plaintiff saw janitor mopping floor as she entered office and, at that same instant, slipped and fell, question of plaintiff's contributory negligence was for jury to decide); *Raff v. Acme Mkts.,* 247 Md. 591, 599–600, 233 A.2d 786 (1967) (where plaintiff slipped and fell on icy ramp at grocery store, issue of plaintiff's contributory negligence was a question for the jury; although parking lot was covered with snow and ice, plaintiff could have assumed that the ramp was an extension of the

sidewalk, which had been cleared of snow and ice, and was therefore safe to use).

We are unable, however, to reach the conclusion Union Memorial draws from the evidence—that Ms. Dorsey was contributorily negligent as a matter of law. In *Craig v. Greenbelt Consumer Servs.*, 244 Md. 95, 97–98, 222 A.2d 836 (1966), the plaintiff was held to be contributorily negligent as a matter of law when she observed a pile of sawdust and, knowing that it was slippery, "without hesitating to plan her course ... when she had a reasonable alternative[,]" walked into the pile and slipped and fell. Under a similar set of circumstances, the plaintiff in *McManamon v. High's Dairy Prods. Corp.*, 230 Md. 370, 372, 187 A.2d 318 (1963), was contributorily negligent as a matter of law. There, although the plaintiff was pregnant and could have avoided the danger by asking a clerk for assistance, she chose to walk on a damp floor and fell, injuring herself. *See also Eyler v. Adolph Beauty Sys.*, 238 Md. 227, 229, 208 A.2d 609 (1965) (plaintiff was contributorily negligent as a matter of law where he saw ice on sidewalk, but proceeded without hesitating or planning his course and elected to step on the ice); *Sugar v. Traub*, 233 Md. 320, 322–23, 196 A.2d 869 (1964) (plaintiff who walked into utility room without looking where she was going and then slipped and fell in a pool of water was contributorily negligent as a matter of law); *Berzups v. H.G. Smithy Co.*, 22 Md.App. 157, 163–65, 321 A.2d 801, *cert. denied*, 272 Md. 737 (1974) (plaintiff was contributorily negligent as a matter of law where he saw ice on step and voluntarily chose unsafe route).

Here, Ms. Dorsey saw the hazards, but did not boldly encounter them as the plaintiffs did in *Craig, McManamon, Eyler,* and, *Berzups.* She and Ms. Allen moved the trash bags, apparently attempting to clear a safe path through the debris. Although Ms. Dorsey testified that cole slaw and potato salad were on the floor and that a liquid was leaking from the bags, she also stated that she only realized a liquid was beneath her feet after she fell and her clothing became wet. Finally, Ms. Dorsey did not seek assistance from the

Hospital's maintenance personnel, but she was under a time constraint and would have had to first locate and then wait for the maintenance workers to clear the room. Accordingly, the question of whether Ms. Dorsey failed to exercise ordinary care for her own safety in entering the room was a question for the jury to decide.

## II.

Prior to trial, in September 1995, Union Memorial served written interrogatories on Ms. Dorsey. Two of the interrogatories asked Ms. Dorsey to:

"State the facts, if any, upon which you rely in alleging that this Defendant was solely responsible for the occurrence."

"State what, if any, precautions or actions the Plaintiff took to avoid the occurrence."

In May 1996, Union Memorial received Ms. Dorsey's response to the interrogatories. Ms. Dorsey's answer to both the above quoted interrogatories was, "Marty, please answer."

On the date set for trial, Union Memorial filed a motion *in limine* to preclude Ms. Dorsey from offering any evidence on the subjects referenced in the interrogatories at issue. Prior to the start of trial, the court heard argument from counsel and denied the motion, concluding that as the Hospital had not moved for an order to compel, it was not entitled to any sanctions.

Union Memorial claims that the trial court abused its discretion in refusing to sanction Ms. Dorsey. It contends that when a party fails to provide a full response to interrogatories, as required by Md. Rule 2–421(b), a party may move for sanctions without first obtaining an order compelling discovery under Md. Rule 2–432. The Hospital emphasizes that the information it sought through the interrogatories was essential to its defense of contributory negligence. It further argues that as Ms. Dorsey was aware of the error and did nothing to supplement her answers, the omission "was clearly willful and deliberate." Union Memorial contends that in light

of Ms. Dorsey's answers to the interrogatories, coupled with her failure to supplement the answers, the trial court abused its discretion in declining to impose any sanction and believes that dismissal of the case was the appropriate sanction.

Maryland Rule 2–432(a) allows, in certain circumstances, for sanctions to be imposed without first obtaining an order compelling discovery and provides in relevant part:

(a) *Immediate sanctions for certain failures of discovery.* A discovering party may move for sanctions under Rule 4–433(a), without first obtaining an order compelling discovery under section (b) of this Rule, if a party ... fails to appear before the officer who is to take that person's deposition, after proper notice, or if a party fails to serve a response to interrogatories under Rule 2–421 or to a request for production or inspection under Rule 2–422, after proper service. Any such failure may not be excused on the ground that the discovery sought is objectionable unless a protective order has been obtained under Rule 2–403.

A party may also seek an order to compel discovery under the Rule 2–432(b), which states in part:

(b) *For order compelling discovery.* A discovering party, upon reasonable notice to other parties and all persons affected, may move for an order compelling discovery if

(1) there is a failure of discovery as described in section (a) of this Rule,

\*　　\*　　\*　　\*　　\*　　\*

(4) a party fails to answer an interrogatory submitted under Rule 2–421, [or]

\*　　\*　　\*　　\*　　\*　　\*

(6) a party fails to supplement a response under Rule 4–201(e)....

A variety of sanctions for failure of discovery are provided for in Rule 2–433(a) [1], including: an order that certain facts are taken as established; refusing to allow a party to present

---

1. Rule 2–433(a) allows for the following sanctions:

or oppose a claim or defense; prohibiting a party from presenting designated matters in evidence; striking out pleadings; staying further proceedings until discovery is provided; dismissing the action; or entering a judgment by default. These sanctions may be imposed upon a motion filed under Rule 2–432(a), if the court finds a failure of discovery. Md. Rule 2–433(a). They may also be imposed if a party fails to comply with an order to compel. *See* Md. Rule 2–433(b) ("If a person fails to obey an order compelling discovery, the court, upon motion of a party and reasonable notice to other parties and all persons affected, may enter such orders in regard to the failure as are just, including one or more of the orders set forth in section (a) of this Rule.")

In the present case, the failure of discovery involved interrogatories. Rule 2–432(a) allows, in relevant part, for a discovering party to move for sanctions without first obtaining an order to compel if a party fails to serve a *response* to interrogatories. In contrast, under Rule 2–432(b)(4) & (6), a discovering party may seek an order to compel if a party fails to *answer* an interrogatory or fails to supplement a response as required by Rule 2–401(e). We turn to Rule 2–421(b) to determine the difference between a response and an answer. That Rule provides:

(b) *Response.* The party to whom the interrogatories are directed shall serve a response within 30 days after service of the interrogatories or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later. The response shall answer each inter-

---

(1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;

(2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or

(3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party.

rogatory separately and fully in writing under oath, or shall state fully the grounds for refusal to answer any interrogatory. The response shall set forth each interrogatory followed by its answer. An answer shall include all information available to the party directly or through agents, representatives, or attorneys. The response shall be signed by the party making it.

 Here, Ms. Dorsey served a response to Union Memorial's interrogatories. The answers provided by Ms. Dorsey in regard to the interrogatories in question were, in essence, not answers at all. They were not in keeping with Rule 2–421(b), which requires that the interrogatories be answered "fully" and that the answers include "all information available to the party." A failure to answer a particular interrogatory, however, may not result in sanctions absent an order to compel. Md. Rules 2–432(b) & 2–433(b). As a result, Union Memorial was required to seek an order to compel Ms. Dorsey to answer the interrogatories at issue.

Regarding Union Memorial's contention that Ms. Dorsey was under a duty to supplement the answers at issue, even if we were to proceed assuming *arguendo* that she was required to supplement the answers,[2] Union Memorial would have had to seek a motion to compel before sanctions could be imposed. Md. Rules 2–432(b) & 2–433(b). In sum, we perceive no abuse of discretion on the part of the trial court in finding that Union Memorial was required to seek a motion to compel before the court could impose sanctions. The trial court did not abuse its discretion in declining to sanction Ms. Dorsey for the inadequate answers provided to the interrogatories at issue.

### III.

 Union Memorial next challenges the authority of the Administrative Judge repeatedly to suspend operation of Rule

---

2. Md. Rule 2–401(e) requires supplementation of answers and states: "Except in the case of a deposition, a party who has responded to a request or order for discovery and who obtains further material information before trial shall supplement the response promptly."

2–507, which avoided dismissal of the case for lack of prosecution. We first set forth the relevant chronology of the case.

May 12, 1995—Ms. Dorsey filed a "Motion to Extend Suspension of Operation of Rule 2–507" as Union Memorial had yet to file an answer and the parties had been negotiating the claim in an ongoing basis.

June 14, 1995—The Administrative Judge ordered that dismissal be deferred until June 28, 1996, but if the case was not finally disposed of by that date, an order of dismissal was to be entered immediately.

June 25, 1996—The case was postponed with no objection from Union Memorial as Ms. Dorsey's attorney was leaving the plaintiff's law firm and a new attorney had not yet been assigned to the case. A new trial date of March 26, 1997 was set.

August 22, 1996—The Administrative Judge ordered that dismissal be deferred until April 28, 1997, but if the case was not finally disposed of by that date, an order of dismissal was to be entered immediately.

March 19, 1997—Ms. Dorsey filed a second "Motion to Extend Suspension of Operation of Rule 2–507" as her attorney was scheduled for another trial on March 26, 1997, the date set for trial, and it was unclear whether the present case could be tried before April 28, 1997. It does not appear that this motion was ever ruled upon.

April 4, 1997—Trial was begun and a jury sworn, but the case was then postponed as a doctor was unavailable. A new trial date of January 8, 1998 was set.

April 15, 1997—Ms. Dorsey filed a third "Motion to Extend Suspension of Operation of Rule 2–507" and alleged that on April 4, 1997, the parties had agreed that the trial would be postponed until January 8, 1998.

April 28, 1997—Union Memorial filed a motion opposing Ms. Dorsey's request for suspension of operation of Rule 2–507.

May 13, 1997—The Administrative Judge ordered that dismissal be deferred until February 9, 1998, but if the case was

not finally disposed of by that date, an order of dismissal would be entered automatically.

Union Memorial claims that as the case was not tried by June 28, 1996, the date set on the first order deferring dismissal, the dismissal had already become an accomplished fact and the Administrative Judge had no power to grant the subsequent orders further deferring dismissal. The Hospital refers us to *Pappalardo v. Lloyd,* 266 Md. 512, 295 A.2d 221 (1972), and *Chase v. Jamison,* 21 Md.App. 606, 320 A.2d 580 (1974), *overruled by Owen v. Freeman,* 279 Md. 241, 247, 367 A.2d 1245 (1977), and argues that the present case falls squarely within their dictates, *i.e.,* because the case was not finally disposed of by June 28, 1996, the dismissal was automatically accomplished with no further notice required. Union Memorial also appears to argue that a party is entitled to only one suspension of Rule 2–507.

Maryland Rule 2–507 controls the present case and states in relevant part:

**Rule 2–507. Dismissal for lack of jurisdiction or prosecution.**

\* \* \* \* \* \*

(c) *For lack of prosecution.* An action is subject to dismissal for lack of prosecution at the expiration of one year from the last docket entry....

(d) *Notification of contemplated dismissal.* When an action is subject to dismissal pursuant to this Rule, the clerk, upon written request of a party or upon the clerk's own initiative, shall serve a notice on all parties pursuant to Rule 1–321 that an order of dismissal for lack of ... prosecution will be entered after the expiration of 30 days unless a motion is filed under section (e) of this Rule.

(e) *Deferral of dismissal.* On motion filed at any time before 30 days after service of the notice, the court for good cause shown may defer entry of the order of dismissal for the period and on the terms it deems proper.

(f) *Entry of dismissal.* If a motion has not been filed under section (e) of this Rule, the clerk shall enter on the

docket "Dismissed for lack of . . . prosecution without prejudice" 30 days after service of the notice. If a motion is filed and denied, the clerk shall make the entry promptly after the denial.

■ The primary focus of Rule 2–507 is to prune the docket of dead cases. *Powell v. Gutierrez,* 310 Md. 302, 308, 529 A.2d 352 (1987).

A dead case is one in which neither party demonstrates an interest in having the issue resolved. This circumstance occurs for varying reasons, *i.e.,* the parties may leave the jurisdiction, they may settle their dispute, or other circumstances may make the issue no longer viable. In any event, parties often neglect to dismiss their suits when their reasons for further prosecution have dissipated. These are the kind of cases that Rule 2–507 was devised to eliminate under a simple procedure.

*Id. See also Mutual Benefit Soc'y of Baltimore, Inc. v. Haywood,* 257 Md. 538, 539, 263 A.2d 868 (1970) (dismissal rule was designed to "focus on the dead case . . . whose mere presence in the mainstream of pending cases created such a paper logjam that our courts were unable to give due attention to cases that still exhibited the vital signs of life").

■ The Rule is "self-executing, in the sense that it is actuated by inaction of the parties and the passage of time." *Stanford v. District Title Ins. Co.,* 260 Md. 550, 554, 273 A.2d 190 (1971). It implicitly recognizes "that the court's business as well as the general public's interest in the proper administration of justice can best be served when litigation is not allowed to stagnate unless the court is satisfied the ends of justice so require." *Id.* Accordingly, the decision to suspend operation of Rule 2–507 rests within the sound discretion of the trial judge and will not be set aside on appeal except "in extreme cases of clear abuse." *Id.* at 555, 273 A.2d 190. The trial judge, who is on the scene, "will have a perception and understanding of the legal environment in which the case is temporarily mired. Therefore, he was vested with the discretion to be exercised consistent with the spirit of the law while

subserving the ends of justice and fairness to the parties." *Langrall, Muir & Noppinger v. Gladding*, 282 Md. 397, 400, 384 A.2d 737 (1978). Nonetheless, "If the party moving to defer dismissal shows an ability to proceed with prosecution and the party opposing deferral demonstrates no serious prejudice, the trial court should defer dismissal." *Younker v. Schmid Prods. Co.*, 310 Md. 493, 495, 530 A.2d 274 (1987).

 Although the present case took quite some time to come to trial, there was never any indication that Ms. Dorsey's claim was "dead" or not viable. Ms. Dorsey never demonstrated an inability or unwillingness to proceed with the case and dismissal of the case would have run counter to the purpose of the Rule. The Administrative Judge, thus, exercised his discretionary authority to defer operation of Rule 2–507 several times. In *Langrall*, 282 Md. 397, 384 A.2d 737, a judge suspended operation of Rule 530, the precursor to Rule 2–507, for ninety days by an *ex parte* order. *Id.* at 399, 384 A.2d 737. A second judge later struck that order and ordered that the case should not be dismissed for a period of six months. *Id.* The Court of Appeals's discussion proceeds from the basic premise that the second judge had authority to enter the subsequent order further suspending operation of the Rule and analyzed only whether the second judge abused his discretion in suspending operation of the Rule by examining the circumstances that delayed bringing the case to trial. *Id.* at 400–02, 384 A.2d 737. Accordingly, in the present case, the discretionary authority granted to the Administrative Judge was not limited to deferring operation of Rule 2–507 one time only. Nor can we discern any abuse of that discretionary authority in granting the several deferments. "[T]he exercise of a court's discretion is presumed to be correct until the attacking party has overcome such presumption by clear and convincing proof of an abuse." *Langrall*, 282 Md. at 401, 384 A.2d 737 (footnote omitted). The record before us does not include any of the Administrative Judge's reasons for granting the three deferments. As such, Union Memorial "invites the appellate court to rule in a vacuum." *Id.* at 402, 384 A.2d 737. Based on this record, we are unable to conclude that the

Administrative Judge abused his discretion. *See Langrall,* 282 Md. at 401–02, 384 A.2d 737 (record was silent as to judge's reasons for suspending operation of Rule 530, but in light of burden on party challenging suspension of the Rule, evidence that judge examined the record, and absence of showing of a lack of good cause for the suspension, judge presumed to have exercised his discretion properly).

In any event, an examination of the limited record before us reveals no abuse of discretion. In her first request for a deferment, Ms. Dorsey alleged that Union Memorial had not yet filed an answer and that the parties were still negotiating the claim. Thereafter, Ms. Dorsey's counsel left the firm she had retained and new counsel had not yet been assigned. "Md. Rule 2–507 was promulgated to remove 'dead' cases from the docket, not to penalize plaintiffs for the procrastination of their attorneys." *Dypski v. Bethlehem Steel Corp.,* 74 Md. App. 692, 699–700, 539 A.2d 1165, *cert. denied,* 313 Md. 30, 542 A.2d 857 (1988). When the case eventually came to trial, it was postponed as a doctor was unavailable. Finally, at no time has Union Memorial alleged that it suffered any prejudice due to the deferments. Under these circumstances we perceive no abuse of discretion on the part of the Administrative Judge in deferring, several times, the execution of Rule 2–507.

Union Memorial relies on *Pappalardo,* 266 Md. 512, 295 A.2d 221, and *Chase,* 21 Md.App. 606, 320 A.2d 580, claiming that the present case falls squarely within their holdings. We disagree. In *Pappalardo,* a notice of contemplated dismissal was sent to the plaintiffs, who filed a motion to suspend operation of Md. Rule 530 within the allotted time period. 266 Md. at 513–14, 295 A.2d 221. The trial court suspended operation of the Rule and further ordered that the Rule would be enforced unless the case was set for trial on or before a specific date. Thereafter, the case was continued during a docket call and the date by which the case had to be set for trial lapsed. The trial court then granted the defendants' motion to dismiss under Rule 530. The plaintiffs moved to reinstate the case and the motion was denied. The Court of

Appeals concluded in part that the case was ripe for dismissal, the required notice had been given, and the plaintiffs had failed to comply with the order that suspended operation of Rule 530 for only a limited period of time. The formal Order of Dismissal later entered by the court "required no further notice and simply reduced to writing what was an accomplished fact." [3] *Id.* at 515, 295 A.2d 221.

As discussed above, there was never any indication that the present case was ripe for dismissal or that Ms. Dorsey had abandoned her claim against Union Memorial. In addition, although the case was not tried within the time set by the first order deferring dismissal, the case was postponed and subsequent orders deferring dismissal were entered. The subsequent deferments were well within the discretionary authority of the Administrative Judge.

*Chase* is also inapposite to the present case. In that case, the plaintiffs filed suit in Baltimore City and three years later, pursuant to Supreme Bench Rule 528L, they were notified that an order of dismissal would be entered in thirty days unless a motion to restore the case to the trial docket was filed. The motion was filed and the case restored to the trial docket; however, the order also set a specific date as the final trial date. An order carrying the case forward was subsequently entered as it had been impossible to try the case on the assigned date. This order also carried the case into the next court term, but the case did not come to trial during that term. The clerk then dismissed the case. The trial court subsequently granted the plaintiff's motion to strike the dismissal and reinstate the case on the trial docket. The defendants appealed.

This Court concluded that by operation of Supreme Bench Rule 528L(6), the trial court had no discretion to extend further the trial date. 21 Md.App. at 610, 320 A.2d 580. We stated that the trial court had discretionary authority over the

---

3. Under Md. Rule 1–324, which was not in existence when *Pappalardo* was decided, notice of the dismissal is now required. *Dypski,* 74 Md.App. at 697–98, 539 A.2d 1165.

case for three years and two court terms, but beyond that limit, "the case is removed from the area of judicial discretion[.]" *Id.* The plaintiffs claimed that under Rule 625 a,[4] now Rule 2–535(a) & (b), the trial court had broad discretionary power to revise its judgment dismissing the case. We held that

> imposition of the sanction in Supreme Bench Rule 528L(6), for failure to terminate a case by the ultimate date allowed by the Rule, has been placed, by the court itself, beyond its own discretionary power to waive. The discretionary power of the court under Maryland Rule 625 a may not be used to relieve a party of the inexorable final consequence of failure to comply with Supreme Bench Rule 528L.

*Id.* at 611, 320 A.2d 580.

This Court then examined Rule 530 only to determine if Supreme Bench Rule 528L was inconsistent with it. In discussing Rule 530, we turned to *Pappalardo* and found it significant that the Court of Appeals did not discuss the trial court's action in dismissing the case after the specific date set for trial had lapsed as an exercise of discretion. *Id.* at 613, 320 A.2d 580. We also stressed that Rule 530 was "automatic" and "self-executing" and finally concluded that it offered the plaintiffs no relief from the operation of Supreme Bench Rule 258L. *Id.* at 614, 320 A.2d 580.

Our decision in *Chase* was expressly overruled by *Owen,* 279 Md. 241, 367 A.2d 1245. In *Owen,* the Court of Appeals examined our decision in *Chase* in terms of the discretionary authority accorded a trial judge to revise a judgment under Rule 625 a. In so doing, the Court of Appeals questioned our reading of *Pappalardo,* in which we determined that it was significant that the Court did not refer to the action of the

---

4. Rule 625 a provided:

> For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity.

trial court as an exercise of discretion. 279 Md. at 246–47 n. 4, 367 A.2d 1245. The Court stressed, "All this Court determined in *Pappalardo* was that the trial court properly dismissed the action . . . pursuant to Rule 530. . . ." *Id. Chase* is also distinguishable as that case was not dismissed under Rule 530, no parties invoked the Rule when seeking to have the case reinstated, and we discussed Rule 530 only to determine if Supreme Bench Rule 528L was inconsistent with it. Accordingly, our holding in *Chase* has no impact on the present case.

In sum, the Administrative Judge did not abuse his discretion in deferring, several times, operation of Rule 2–507.

**JUDGMENT REVERSED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL.**

**COSTS TO BE PAID TWO-THIRDS BY APPELLEE AND ONE-THIRD BY APPELLANT.**